Order of General Term reversed and judgment for defendant.

---

GEORGE W. BLEND, Plaintiff, in Error v. THE PEOPLE OF THE STATE OF NEW YORK, Defendants in Error.

On the trial of an indictment at a Court of Sessions, it is error, if one of the justices of sessions, who has sat during the impanneling of the jury, and a portion of the trial, abandons the bench, and a justice of the peace, by the direction of the county judge, takes his place, and the trial proceeds.

A conviction upon a trial where such substitution has taken place, is irregular and will be reversed.

(Argued January 5th, 1870, and decided March 17th, 1870.

ERROR to the General Term of the Supreme Court in the sixth judicial district, to review the affirmance of a conviction of the plaintiff in error, at the Delaware Sessions.

Blend was indicted at the Delaware Sessions for false pretences, in June, 1866, and tried November 30th, 1866.

The defendant appeared in person, and the trial proceeded before WILLIAM MURRAY, Jr., Esq., county judge, and GRITMAN ELWOOD and WILLIAM MALLORY, Esqs., associate justices of said Delaware Sessions, until the court adjourned for dinner, December 1st.

On reassembling, it was discovered that GRITMAN ELWOOD, one of the justices of sessions aforesaid, had left the court, and

the village of Delhi, and gone to his home, twenty-three miles distant.

Whereupon the county judge appointed Harvey F. Davidson a justice of the peace, and qualified to act, to fill such vacancy. (Revised Statutes, 5th ed., vol. 3, p. 296, § 11.)

Defendant's counsel objected to "Justice DAVIDSON taking his seat as justice of said sessions at that stage of the trial." No further objection or demand was made, nor the grounds of the objection stated. No re-trial before said court as thus constituted, was demanded by defendant; but defendant continued to give evidence, and the prosecution rebutting evidence.

The court charged the jury and they found the defendant guilty of the offence charged in the indictment.

No question of any kind was presented to or decided by the court, either for or against the accused, from the time Justice DAVIDSON took his seat until after the jury rendered their verdict, after which defendant moved in arrest of judgment, and for a new trial; and on December 5th, sentence was pronounced, and was, that defendant pay a fine of $300.

Defendant made his bill of exceptions, obtained the certificate of the county judge, and gave bail for his appearance at next Court of Sessions, to abide its order and pay the fine if the judgment is affirmed, and a writ of error was issued thereout. The cause was argued at General Term of Supreme Court, sixth judicial district, and judgment unanimously affirmed. Judgment of affirmance entered July 29th, 1868, and writ of error sued out to this court, July 30th, 1868.

*William Gleason,* for the plaintiff in error, cited 3 R. S., 465, § 2; *Oakley* v. *Aspinwall* (3 Comst., 547); *Cancemi's Case,* 18 N. Y., 128; 7 Abb., 227; *Grant's Case,* 4 Parker C. R., 527; *People* v. *White* (24 Wend., 528).

*Ferris Jacobs, Jr.* (district attorney), for the defendant in error, cited 3 R. S., 296, § 11, 5th ed; *Conkey* v. *People* (5 Park., 38; *Wormeley's Case,* 8 Gratt., 808; *Corning* v. *Slos-*

*sen* (16 N. Y., 295); *Walker* v. *Wainright* (16 Barb., 488); *Shorter* v. *People* (2 Comst., 193); *Lowenberg* v. *People* (5 Park. C., 38); *Willis* v. *People* (5 Park., 647); *People* v. *Bransby* (32 N. Y., 525).

Ingalls, J. The judgment should be reversed upon the ground, that error was committed in substituting Davidson in the place of Elwood, as a justice of the sessions, after the trial in the above matter had commenced. Such substitution was objected to by the counsel for the prisoner. Previous to such substitution, the jury had been impanneled, and a portion of the evidence taken. The Constitution of the State provides that the county judge, with two justices of the peace, to be designated according to law, may hold Courts of sessions. The two justices are indispensable to constitute a legally organized court, and neither can be dispensed with any more than the county judge. When Elwood abandoned the trial, the court was disorganized, so far as this trial was concerned. This is not the case where a member of the court leaves the bench for a few moments, intending to return, and does return, but a total abandonment of the trial, in consequence of which one-third of the court is changed; and it is not for us to speculate in regard to the probable injury which might result from the substitution of Davidson; it is sufficient that the prisoner had a right to insist that his trial should proceed before the same court before which it was commenced. It is insisted by the counsel for the defendants in error, that no possible injury could result to the prisoner in consequence of such change. We have no means of determining that question, as we are unable to ascertain from the facts before us, what influence Elwood might have exercised during the trial, or in determining the punishment to be inflicted upon the prisoner. When the Constitution requires a court to be constituted of a certain number of members, we are not at liberty to determine judicially, that two members of such court are so far useless appendages, that they may be changed during a trial to suit their convenience, and others substituted

in their places.    In the case of *Cancemi* v. *The People* (18
N. Y., 129), it was held, that, even by consent, a prisoner
could not be tried by eleven jurors, and the conviction was
reversed.    STRONG, J., remarks (page 136), " the substantial
constitution of the legal tribunal, and the fundamental mode of
its proceeding, are not within the power of the parties."    The
judgment should be reversed, and a new trial ordered at the
Court of Sessions of Delaware county, and the record and
proceedings remitted to that court.

All the judges concurring, judgment reversed and new trial
ordered.

NOTE.—In the thirty-fourth volume of the New York Reports, page 649,
the case of *Rodes* v. *Bronson* is reported, in which the Court of Appeals
decided that a mortgage executed in 1851, to be paid in 1857, expressly *in
gold or silver coin*, lawful money of the United States, might be paid in legal
tender notes.    This decision was, on error to the United States Supreme
Court, reversed by a judgment reported in 7 Wallace, 229.

The report, in the thirty-fourth New York Reports, does not disclose that
there was any dissent from the ruling of the majority of the court.

In fact, however, LEONARD and PECKHAM, JJ., did, both of them, dissent,
and Mr. Justice LEONARD read a dissenting opinion, which the reporter has
thought it not improper to preserve in this note, as no notice is taken of it
in the report of the case.    It is given as a part of the judicial history of an
exceedingly important legal question.    The following is the opinion:

LEONARD, J.    It was conceded by the counsel for the defendant, that the
constitutionality of the law, making treasury notes a legal tender for the
payment of private, as well as public debts, is not here in controversy.
Whatever individual opinions have been formerly indulged, they are sur-
rendered for the present from a due respect to judicial authority expressed
by the highest court of the State. (27 N. Y. R., 400, *Meyer* v. *Roosevelt.*)

The sole remaining question is in respect to the application of that law
to the present case.

The subject naturally invites to an extended discussion, and the material
is before me, as well in the elaborate reasoning of learned and able counsel,
as in the copious references to authority from essayists, history, and legal
lore, for a comprehensive treatise upon the abstract sciences of currency and
finance.    While I have not neglected the opportunity for a careful examina-
tion, I shall confine my observations to a very brief limit; such as appears
to my mind to bear directly upon the legal question presented by the few
facts of the case, and the act of congress making treasury notes lawful
money, and a legal tender in payment of public and private debts.    I shall

Note by the Reporter.

not expect to convince, where it may be expected that the gravity of the subject has already induced each member of this court carefully to ponder the judgment which he is to pronounce, but shall endeavor only to perform the duty which has fallen to me by announcing my convictions according to the light of my own reason and conscience.

It is a fact, of which we are to take judicial cognizance, that a treasury note for one dollar or any other sum, is not an equivalent for an equal amount of gold or silver coin in the purchase of property. At the time the tender in this case was made, the sum tendered in notes would purchase less than one-half of the merchandise or property that the same sum in coin would procure. The usual currency of the United States now consists of treasury notes and bank paper, redeemable in such notes. That currency has become the customary standard of values in commerce among our own people; but it is not the standard of commerce between the people of the United States and those of other countries; nor will our paper currency pass outside of our national boundaries, except by a computation which will cover the discount required for sending it home, and reducing it to coin by an exchange in a broker's office. Coin has ceased to be the currency of commerce in the United States, and can be obtained, ordinarily, in no other way than by purchase. In the traffic to procure it, the price or value is estimated by the fluctuating credit which obtains in the market for our paper currency. While the dollar in coin will now purchase very nearly the same amount of merchandise or property which it did before the act of congress, the paper dollar or treasury note has never, since that date, been received by the seller as an equivalent for gold or silver coin, but he has always demanded an enhanced price when payment was to be made in the paper currency. It seems entirely self-evident from these facts, as well as by the admitted fact in the case of the relative value of coin and treasury notes in the market when the tender was made, that such notes are not an equivalent for gold and silver coin in equal sums, and that coin has become a commodity, dealt in or exchanged for paper money or treasury notes.

The stipulation of the bond and mortgage is that the sum named shall be paid "in gold or silver coin, lawful money of the United States." These latter words, "lawful money of the United States," are to be understood as descriptive of the coin, and not as convertible or equivalent only for another kind of lawful money. If these words are to be accepted in any other sense, as insisted by the plaintiff's counsel, it weakens the terms of the instrument. The defendant, when preparing his security, and requiring payment in gold or silver coin, cannot be said, without stultifying him, to have intended that it might be discharged in any lawful money which was not the equivalent in purchasing capacity with the coin named.

The parties to the contract, undoubtedly, had reference to the kind or description of gold or silver coin in which payment should be made.

There was, in 1851, when this mortgage was executed, as at the present time, a coinage of gold and silver, lawful money of the United States. It would be contrary to all the ordinary rules of construction to assume a

meaning for the words " lawful money," which carries with it the assumed intention of the parties to expunge the words " gold or silver coin " from the contract, and that payment might be made in lawful money of less value. This construction gives the option, as to the medium of payment, to the obligor; that is, that the obligor imposed the condition upon the obligee to accept payment in a cheaper currency than gold or silver coin of the United States. This would be contrary to our ordinary experience. The contract requires solution in an article which has now become a commodity withdrawn from circulation as a currency, bought and sold daily for lawful money, treasury notes, throughout the United States. If this be not so, there is no contract payable in coin, which can be literally enforced. The man who borrows $100 in gold coin of his neighbor to-day, agreeing to return a like amount of coin to-morrow, may discharge the obligation by payment in legal tender notes of the same amount. The mind revolts from such dishonesty. A contract made to-day, payable in coin, can have no greater force, or different construction from that made in 1851. Contracts to buy or sell coin, contrary to the belief of congress, which has endeavored in vain to enact stringent laws to prevent them, would be violated without incurring any damages, if the arguments of the plaintiff's counsel be sound; for the courts must then deny the most palpable truth, and insist and hold that there is no difference between lawful money in coin, and lawful money in treasury notes. Such a farce is too broad to be respectable in a court of justice.

It is urged, in answer to these views, that contracts payable in commodities, are solvable in damages by the amount of dollars named in the contract. This position is fortified by an abundance of authority, when the price at which the commodity is to be taken, is named in the contract. A promissory note for $100, payable in salt at fourteen shillings per barrel, or in paper at three and a half cents per pound; or in land at nine shillings per acre, is discharged by the payment of $100. Such promissory notes contain an implied alternative as to the medium of payment, not designed to protect the payee against a depreciated currency, but to secure $100 in money, or its equivalent, in some commodity, at an agreed rate, that will not require a resort to the courts to ascertain the amount, and is for the benefit of the obligor.

The present contract, it will be readily observed, differs essentially from the class of cases relied on. No price of the commodity is here fixed, and the manifest object is to guard against a depreciated currency. It is to be assimilated more readily to a different class of contracts payable in commodities.

A rent payable in a certain number of bushels of wheat, or in a certain number of fowls, can be discharged only by the delivery of the articles, or by payment of their market value. In the latter case, the object is not for the advantage of the obligor, but to secure a mode of payment that shall guard against the fluctuations of value adversely to the landlord.

These considerations satisfy me that the parties have stipulated for pay-

ment in a commodity; and, although the contract is solvable in treasury notes, it can be done only at the rate which coin demands in the market; in the case of a tender by the obligor, at the time the tender is made, or if payment is sought in the courts, by the obligee, at the time of the trial. The tender, in this case, was of an insufficient amount, and the complaint was properly dismissed at the trial.

There is, also, a further consideration worthy of attention. The plaintiff has demanded equitable relief, by compelling the mortgagee to execute satisfaction of the mortgage. It is not the mortgagee seeking to compel the payment of his security in coin, when the rate at which it can be obtained in currency appears ruinous to the debtor; nor is it the obligor named in the bond, but the purchaser of the premises upon which the security is chargeable, who is triumphantly seeking to discharge the lien "without mercy." We know not, but that the original parties to the contract are willing to permit the payment to wait until happier times shall restore the currency mentioned in the contract, to its former accustomed channels in commerce, when gold and silver coin will cease to be an article of traffic. It has never been the rule for a court of equity to permit its power to be invoked for the purpose of enforcing forfeitures and penalties, or hard conditions.

At the time of the tender, made by the plaintiff, the defendant had taken no steps, so far as appears from the case, to inforce a collection of his demand.

While the mortgagee is willing to wait for his principal and interest, no protection from a court of equity appears to be required in behalf of the mortgagor, or the owner of the equity of redemption, to compel the mortgagee to accept payment in a currency, which is not a commercial equivalent for that in which it was stipulated by the contract, that payment should be made. It would be more in harmony with equitable principles, even if the plaintiff were right in his construction of the law, which I deny, to leave him to his defence, whenever the mortgagee shall elect to take proceedings to enforce his security by foreclosure.

The judgment of the General Term should be reversed, and that of the Special Term affirmed, with costs.