SARAH F. HAND as Executrix, etc., Respondent, *v.* JOHN NEWTON, Appellant.

The town of B., which claimed title under certain letters patent executed in 1666 and 1686 by the Colonial governors of the Province of New York, executed to plaintiff a lease of certain lands under water in a bay included in the boundaries of the said grants. In an action for alleged trespass in entering upon said lands and removing oysters therefrom, it

appeared that the town, by various acts continuing from the time of said grants, assumed the rights of rental and exercised control of the lands under water in the bay. *Held,* that the title was in the town and the lease conferred upon plaintiff the exclusive right to take oysters from the lands covered by the lease ; and that it was immaterial whether or not there was a natural oyster-bed on the land.

The board of trustees of the town in 1871 passed a resolution declaring it not to be the intention of the trustees "to lease oyster lots on ground where oysters are naturally growing." In 1880 and before the granting of the lease in question, said resolution was, by another resolution passed by said board, repealed or modified so as to allow such leasing. *Held,* that the first resolution did not affect the validity of the lease; but that in any event the trustees had the right to repeal or modify it, and having so done, their right to lease without regard to the fact of the existence of a natural oyster-bed was restored.

(Argued March 13, 1883 ; decided March 27, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made February 13, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict.

This action was brought originally by Robert N. Hand, the present plaintiff's testator, to recover damages for entering upon lands under water in Port Jefferson bay or harbor and removing oysters therefrom.

The material facts are stated in the opinion.

*Clifford A. H. Bartlett* for appellant. The town of Brook-haven can only claim an exclusive fishery in the waters of Port Jefferson bay by virtue of its ownership of the soil under water. The charters do not convey any land, nor is there any evidence that the town ever acquired the land covered by plaintiff's lease. (*Palmer* v. *Hicks,* 6 Johns. 135 ; *Jackson* v. *Hudson,* 3 id. 384 ; *La Plaisance Bay Harbor Co.* v. *City of Monroe,* Walker's Ch. [Mich.] 169 ; *Duke of Somerset* v. *Fogwell,* 5 B. & C. 885 ; *Duke of Beaufort* v. *Mayor of Swansea,* 3 Exch. 414, 424; *Atty.-Gen.* v. *Parsons,* 2 C. &. J. 279 ; *Feather* v. *The Queen,* 6 B. & S. 283 ; *Bristow* v. *Cormican,* 3 Eng. L. R. [App. Cas.] 652, 653, 655 ; *Murphy* v. *Ryan,* 2 Irish R. 149 ; *Mayor of Carlisle* v. *Graham,* L. R.,

4 Exch. 368; *Bristow* v. *Cormican*, 10 Irish C. L. 407; 60 N. Y 71.) The defendant had a common right and liberty in fishing and taking oysters in the *locus in quo* acquired by the inhabitants of the town of Brookhaven, by long user, or by adverse enjoyment on their part, or by the intentional abandonment or non-user on the part of the trustees. In any event this question should have been submitted to the jury. (Angell on Water-courses, §§ 201, 221; Hall on Sea Shore, 25; *Ricard* v. *Williams*, 7 Wheat. 109, 110; *Hazard* v. *Robinson*, 3 Mason, 275, 276; *Adams* v. *Van Alstyne*, 25 N. Y. 237; *Parker* v. *Foote*, 19 Wend. 311; *Friend* v. *Braintree Man. Co.*, 23 Pick. 221, 222; *Hodges* v. *Hodges*, 46 Mass. 212; *Hatch* v. *Wright*, 17 id. 297; *Fuller* v. *French*, 10 Metc. 363; *Jennison* v. *Walker*, 11 Gray, 425; *Farrar* v. *Cooper*, 34 Me. 400, 401; 2 Irish L. R. 118; 3 Eng. L. R. [App. Cas.] 652; *Reece* v. *Miller*, 8 Eng. L. R. [Q. B.] 626.) The attempted leasing of any natural oyster bed in the town by the trustees thereof is invalid and inoperative, because it is in violation of an existing law of the town. (*Brick Church* v. *New York*, 5 Cow. 540, 541; *McDermott* v. *Bd. Police*, 5 Abb. 434; *Kent* v. *Quicksilver Mining Co.*, 78 N. Y. 179.) Wherever oysters have previously existed in their native state no one can deprive other persons of the right to take them by depositing oysters in the same place. (*McCarty* v. *Holman*, 22 Hun, 53; *Decker* v. *Fisher*, 4 Barb. 595; *Brinkerhoff* v. *Starkins*, 11 id. 250; *Lowndes* v. *Dickinson*, 34 id. 589; *Fleet* v. *Hegeman*, 14 Wend. 42; *Gulf Pond Oyster Co.* v. *Baldwin*, 42 Conn. 258; *State* v. *Taylor*, 27 N. J. 122, 123; *Paul* v. *Hazleton*, 37 id. 106.)

*Thos. S. Strong* for respondent. The town patents, granted by the English Crown in 1666 and 1686, expressly conveyed to the patentees the land under the water of the bays and harbors included within the bounds of the grant, as well as the exclusive right to the oyster fisheries therein. (*Trustees of Brookhaven* v. *Strong*, 60 N. Y. 56.) It can make no difference whether the lands covered by respondent's lease were

natural oyster lands or not. (*Robbins* v. *Ackerly*, 24 Hun, 499.)

MILLER, J.    The plaintiff's title rests upon two ancient patents granted to the inhabitants and freeholders of the town of Brookhaven.    These patents, one dated 1666 and the other 1686, granted to the inhabitants and freeholders of the town of Brookhaven the lands under the water in the bays and harbors, included within the bounds of the patents, and the exclusive right to the oyster fisheries therein.    The land upon which the alleged trespass was committed is included within the boundaries of these charters.    In the case of *Trustees of Brookhaven* v. *Strong* (60 N. Y. 56), it was held, "That by the common law the king had the right to grant the soil under water and with it the exclusive right of fishery, and that a grant by the Colonial Government, confirmed by subsequent legislation, conveyed an exclusive right to the oyster fishery," and the right of the plaintiff to sue for taking oysters, within the limits of the patent, was sustained.    The trustees have exercised the power conferred upon them, by the grants in question, by various acts from the time of said grants and in later years by leasing the bottom of the bay for raising oysters. It must, therefore, be assumed that the title to the land was in the town and we are unable to perceive upon what ground it can be maintained that the trustees were not entitled to lease the oyster beds, lying on the land under water, for the purpose of raising oysters under the power conferred by the grants in question.

That the land in question in this action was a part of a natural oyster bed cannot, we think, make any difference.    The town had a right to lease the land whether natural oysters were growing thereon or otherwise under the decision cited.

This principle is also fully upheld in the case of *Robins* v. *Ackerly* recently decided in this court.*    In view of these decisions the question as to the right of the town to lease the land under water for oyster beds and to control and dispose of

*91 N. Y. 98.

the same must be regarded as *res adjudicata*, and under the decisions it is very manifest that the right to the plaintiff must be upheld unless a case is made out which is excepted from the operation and effect of the principle established by the cases cited. There is nothing in this case that vests a common right in the defendant, by user or otherwise, or by non-user or abandonment on the part of the board of trustees to take oysters, nor was there any question of fact for the jury to pass upon in this respect. The appellant claims that the lease by the trustees to the plaintiff does not include the natural oyster bed in controversy because it was not the intention of the trustees to lease such oyster lots. This claim is based upon the resolution of the trustees passed in 1871 by which it was declared " it is not and has not been the intention of the trustees to lease oyster lots on ground where oysters are naturally growing," etc., and that for this reason the lease in question was invalid. This position is not maintainable. Although the resolution referred to had been adopted no reason existed why the trustees had not the right and the power to change their action and to execute a lease for the land under water where oysters naturally grew. The resolution merely declared that it had not been and was not the intention of the trustees to lease lands where oysters naturally grew, and that in future applications the lots should be examined before letting at the expense of the applicant. The resolution was not, therefore, absolute in its terms, and it appears the examination was had pursuant to the resolution of the board of trustees before the granting of the lease to the plaintiff in this action. But a complete answer to the point is that on the 11th of September, 1880, and before the granting of the lease in question to the plaintiff, a resolution was passed by the board of trustees, by which the resolution of 1871 was repealed or modified, and under this resolution a lease was granted to the plaintiff of the lands under water, which are now in dispute, for the purpose of raising oysters. We think there was no legal objection to the last-named resolution, and that the trustees, in the exercise of their right to the land under water, were justified in changing

the policy, which had been indicated by the previous resolution. There is no law which prohibited such action, and the last resolution must be considered as superseding the former one and as conferring a perfect right and title to the plaintiff in this action to the oyster beds in question.

The case of *Averill* v. *Hull*, decided in Connecticut in 1870, cited by the appellant's counsel, we think has no application and is not in point. We have considered all the points and suggestions made by the appellant, and we do not find in any of them sufficient ground for a reversal of the judgment, which should be affirmed, with costs.

All concur.

Judgment affirmed.