# THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, v. JOSEPH BORK, APPELLANT.

*Sentence imposed by a tribunal irregularly constituted — presumption in favor of the regularity of its action—when any irregularity therein is waived by the failure of the defendant to object — conviction for a conversion of public funds — 1875, chap. 19 — the verdict need not state the amount of the loss sustained —right of the appellate court to pronounce an appropriate judgment upon reversing an erroneous one — Code of Criminal Procedure, chap. 4.*

A judgment, convicting the defendant of the crime of embezzling and converting property and funds of the city of Buffalo, was affirmed by the General Term and the Court of Appeals. The verdict was rendered at a term of a Court of Oyer and Terminer held by a justice of the Supreme Court and two justices of Sessions, in May, 1881. In May, 1883, a judgment was entered against and a sentence imposed upon him at a term of the same court. It appeared from the caption of the minutes kept by the clerk upon the day that the defendant was sentenced, and from the caption of the judgment as formally prepared and

entered by him, that the said Court of Oyer and Terminer was held by a justice of the Supreme Court and two justices of Sessions. It appeared from the record that the defendant was present in court when the sentence was pronounced and that when asked if he had any legal cause to show why judgment should not be pronounced by the court against him, he said nothing.

Upon an appeal by the defendant it was claimed that the judgment and sentence was rendered void, by the presence in the court of the two justices of Sessions, as, at the time the sentence was pronounced, a Court of Oyer and Terminer was by section 23 of the Code of Criminal Procedure, as amended by chapter 360 of 1882, required to be held by a justice of the Supreme Court without an associate.

*Held,* that, considering the effect of section 542 of the Code of Criminal Procedure providing that after hearing the appeal the court must give judgment without regard to technical errors or defects, or exceptions which do not affect the substantial rights of the parties, and the legal presumption that the Court of Oyer and Terminer held in May, 1883, was regularly opened and held, together with the defendant's acquiescence in the proceedings, and his failure to then object to the constitution of the court, the objection should be overruled and the conviction and sentence affirmed. (BARKER, J., dissenting.)

Chapter 19 of 1875, providing for the more effectual punishment of peculation and other wrongs affecting public moneys and rights of property, authorizes one convicted of the offense thereby created to be punished by imprisonment in a State prison, or by a fine not exceeding "five times the loss resulting from the fraudulent act or acts which he shall have so committed, aided or abetted, to be ascertained as hereinafter mentioned, or by both such imprisonment and fine." The third section provides that "when rendering a verdict of guilty upon the trial of any person indicted under this act, the jury *may* find and state with their verdict the amount of loss resulting from the offense of the defendant."

*Held,* that the statute was permissive only and not mandatory, and that it was not essential to the validity of a verdict that it should state the amount of loss resulting from the offense of the defendant.

That, in any event, the defendant could not object to a general verdict of guilty on account of the omission of such statement unless he had previously requested that such statement should be embodied therein.

*It seems,* that, under the provisions of chapter 4 of the Code of Criminal Procedure, an appellate court has power upon reversing an erroneous or void judgment, to itself pronounce an appropriate judgment upon the verdict rendered, where the latter, and all the proceedings prior thereto, are regular and correct. (Per BARKER, J.)

*It seems,* that the legislature may confer on a court, separate and distinct from the trial court, the right to pronounce sentence on a verdict convicting the accused. (Per BARKER, J.)

APPEAL by the defendant from a judgment convicting him of the crime of embezzling and converting the property and funds of the city of Buffalo, rendered against him in and by a Court of

Oyer and Terminer, held in the city and county hall at the city of Buffalo, in and for the county of Erie, on the 3d day of May, 1883; and also from an order denying a motion for arrest of the judgment made on the 9th day of April, 1883. The defendant was convicted at a term of the Oyer and Terminer in Erie, held in June, 1881. Thereupon, before sentence was pronounced, a stay was granted, and a case and bill of exceptions were made, and the same were heard before this court in January, 1882, and the conviction affirmed at the April term, 1882. Thereupon the defendant appealed in April, 1882, from the judgment entered upon that decision, to the Court of Appeals, and the judgment was affirmed in that court in 1883. (See 91 N. Y., 5.) The caption of the minutes kept by the clerk on the day of the term held in May, 1883, at which the defendant was sentenced, reads, viz.: "At a Court of Oyer and Terminer held in the city and county hall in the city of Buffalo, in and for the county of Erie, on the 3d day of May, 1883. Present, Hon. CHARLES DANIELS, justice presiding; FAYETT READ, SETH A. ABBOTT, justices of sessions." Then follows the title of the cause, and the record then proceeds to state, viz.: "The defendant, Joseph Bork, having been held and convicted at a term of this court in the month of June, A. D. 1881, of * * *. Defendant appears in court in person. Defendant being asked by the court if he had any legal cause to show why judgment of the court should not now be pronounced against him, said nothing." "Defendant sworn, etc. * * * Defendant sentenced to be confined in the State prison at Auburn, N. Y., at hard labor for the term of five years. (A copy.) Charles H. Avery, deputy clerk." Then follows a similar caption to the one already stated, then a recital of the proceedings from the finding of the indictment down to the trial in 1881, and the conviction by the jury and the sentence.

Chapter 19 of 1875, under which the defendant was convicted provides, in its first section, that a person convicted of the offense thereby created shall "be punished by imprisonment in a State prison for a term not less than three years or more than ten years, or by a fine not exceeding five times the loss resulting from his fraudulent acts or acts, which he shall have so committed aided or abetted, to be ascertained as hereinafter mentioned, or by both such

imprisonment and fine." The third section provides that " when rendering a verdict of guilty upon the trial of any person indicted under this act, the jury may find and state with their verdict the amount of loss resulting from the offense of the defendant."

*Norris Morey*, for the appellant.

*Edward W. Hatch*, district attorney, for the respondents.

HARDIN, J. :

Section 542 of the Code of Criminal Procedure reads as follows : " After hearing the *appeal, the court must give judgment without regard to technical errors or defects*, or to exceptions which do not affect the substantial rights of the parties." This section was adopted to prevent " technical errors or defects " from defeating the ends of justice. And all such errors or defects as do not affect the substantial rights of the party complaining, the court must disregard in considering the case before it upon appeal.

It is now urged that since the amendment of section 23 of the Code of Criminal Procedure in 1882, " a Court of Oyer and Terminer is held by a justice of the Supreme Court without an associate." (Chap. 360, Laws of 1882.) We held in *Ostrander* v. *The People* (29 Hun, 519) that after the passage of the act of 1882 there was no law authorizing justices of Sessions to sit in the Oyer and Terminer. Our decision in that case was subsequently affirmed by the Court of Appeals. We may properly assume that when the Oyer and Terminer of the 3d of May, 1883, was opened, and a justice of this court appeared and presided, a regular court was held, as the law authorizes.

It is a universal presumption in respect to judicial proceedings, criminal as well as civil, that they have been conducted according to law, unless the contrary is clearly made to appear. The law also presumes that judicial officers have discharged their duties according to the requirements of the law, until the contrary appears. In the case in hand the Court of Oyer and Terminer appears to have been presided over by a justice of this court in the proper place, and in the proper building for holding Courts of Oyer and Terminer in Erie county. Such court had jurisdiction of the subject-matter and the person of the defendant, as the record before

us shows, and nothing to the contrary is shown or claimed by the defendant. If we grant that the caption contains a recital not authorized by the law, may it not be disregarded as surplusage, and at most showing a technical error "which does not affect the substantial rights of" the defendant.

When he appeared in the court on the 3d day of May, 1883, he did not object to the jurisdiction of the court, nor that it was not holden by the proper authority. Strengthening the presumption that the officer authorized by law to hold a Court of Oyer and Terminer did then and there discharge his duty, is the absence of an objection or exception to the proceedings then had. For the first time the objection to the organization of the court on the 3d day of May, 1883, is taken after the court has completed its duty in the premises. The defendant apparently was silent, acquiescing in the proceedings as conducted by the court when the sentence was pronounced. We incline to the opinion that the remarks of Judge ANDREWS in *People* v. *Cornetti* (92 N. Y., 88), are applicable here. That judge said, as follows: "It is claimed that the Court of Oyer and Terminer by which the prisoner was tried was not legally constituted, the allegation being that the justices of Sessions, who in part composed it, were not legally designated or elected. This point is taken here for the first time. It was not raised at the trial, and there is no evidence and no exception bearing upon it. It must be assumed therefore that the court was properly constituted, and that the justices of Sessions who acted, were duly designated according to law."

Again, in *People* v. *Hovey* (92 N. Y., 554), the court in considering when an exception should be taken, says, "an exception to a charge taken after a criminal trial had terminated, and where, if erroneous, the jury could not have been instructed to disregard the erroneous instructions, does not present any question of law for the consideration of an Appellate Court." This case differs from those decided before the adoption of section 542 which cases relate to mere irregularities. Here we have a court in which sat a justice of this court, clothed with full power to conduct the court, and such court, the record says, imposed a sentence without any objection or exception being taken thereto.

In *Commissioners of Highways* v. *The Judges* (7 Wend., 264),

it was said by the court that the fact that the certificate was made by twenty freeholders did not vitiate it, though only twelve were required by the statute, and in the same case Judge NELSON said, "the objection that one of the judges who decided the appeal had before passed upon the same question, might be considered as warranted by the provision of the statutes forbidding officers acting in appellate tribunals from taking part in the decision of matters before determined by them (2 R. S., 275, § 3), had it been urged when the question was under consideration before the judges; but was it not; the appeal was contested solely upon the merits, and the commissioners are now too late to avail themselves of the objection. It might have been and probably was waived. It would promote litigation and contravene well established principles now to allow it as well taken."

We think we must obey the letter and spirit of section 542 of the Code of Criminal Procedure, and that to do so we should sustain the judgment before us. (2.) The opinion of BARKER, J., as to the questions made as to the form of the verdict meets with our approval. (3.) The views already expressed lead to an affirmance of the order refusing a discharge of the prisoner on a writ of *habeas corpus.*

Judgment affirmed, order denying motion for arrest of judgment affirmed, and order refusing a discharge of prisoner affirmed.

SMITH, P. J., concurred.

BARKER, J.:

The indictment on which the defendant was tried and convicted, is based upon charges which constitute a violation of the provisions of chapter 19 of the Laws of 1875, entitled, "An act to provide more effectually for the punishment of peculation, and other wrongs affecting public moneys and rights of property."

The property and funds wrongfully and illegally converted by the appellant to his own use, as described in the indictment, consisted of one hundred bonds, issued by the city of Buffalo known as the city and county hall bonds, of the denomination of $1,000 each, and of the value of $1,000 each, the property of the city of Buffalo.

A more particular reference to the indictment and statement of

the nature of the offense described, is unnecessary for the purpose of this appeal.

The trial on the indictment was had at a Court of Oyer and Terminer, held in and for Erie county, in May, 1881, Mr. Justice DANIELS, presiding, and the justices of Sessions sitting and acting as his associates. The form of the verdict as rendered by the jury and recorded by the clerk was, that the prisoner is, " guilty of the crime as charged in the indictment."

Before sentence was pronounced on the conviction, a stay was granted and the rulings made on the trial, to which the defendant took exceptions, were reviewed in this court, and in the Court of Appeals, on a bill of exceptions, and in both courts the conviction was sustained and a new trial denied. On filing a *remittitur* from the Court of Appeals, with the clerk of Erie county, the order and judgments of the Supreme Court and the Court of Appeals were made the judgment of the Court of Oyer and Terminer, thereupon and on the 9th day of April, 1883, the defendant moved in arrest of judgment, which motion was denied. The record before us does not disclose the grounds upon which the motion in arrest of judgment was founded. At a subsequent day, and on the 3d day of May, 1883, at a term of the Court of Oyer and Terminer, held in and for Erie county, judgment was pronounced on the verdict and the prisoner was sentenced to be confined in the Auburn prison, at hard labor, for the term of five years.

One of the grounds upon which the appellant now seeks to reverse the judgment is, that unauthorized persons, to wit, the justices of Sessions in and for the county of Erie, were present and acted as members of the Court of Oyer and Terminer, when the sentence was made up and judgment pronounced against the prisoner. If such be the fact, and the same is made to appear by the record, then the judgment is illegal and void, and the prisoner is suffering punishment administered by a tribunal unknown to the law of the land.

Formerly, Courts of Oyer and Terminer, as organized under the judiciary act (Laws of 1847), except in the city and county of New York, were composed, of a justice of the Supreme Court, who presided, the county judge, and the justices of the peace, designated

as members of the Court of Sessions; with a provision that the presiding justice and any two of the other officers mentioned therein, constituted a quorum and had power to hold a court. In June, 1882, the organization of the court was changed, and the court as now constituted consists of a justice of the Supreme Court without any associate; the words of the enactment being as follows: "A Court of Oyer and Terminer is held by a justice of the Supreme Court, without an associate." (Section 23 of the Code of Criminal Procedure, as amended by chapter 360, Laws of 1882.)

An inspection of the record, as set forth in the appeal-book, discloses the fact that when Bork was sentenced there were present and acting as members of the court, and participating in its deliberations, other persons than the justice of the Supreme Court who presided. In the papers embraced in the judgment-roll is a copy of the minutes of the trial; a copy of the minutes of the motion made in arrest of judgment; a copy of the minutes of the judgment as directed and required by section 485 of the Code of Criminal Procedure. In the caption of the clerk's minutes, as kept by him on the day the prisoner was sentenced, is a statement of the persons who were present and acting as members of court, the whole of which is as follows:

" At a Court of Oyer and Terminer, held at the City and County Hall, in the city of Buffalo, in and for the county of Erie, on the 3d day of May, 1883.

" Present — Hon. CHARLES DANIELS, *Justice Presiding.*
        " Hon. FAYETTE READ and SETH A. ABBOTT, *Justices of Sessions.*"

Then follows the judgment, as prepared by the clerk and signed by him, the caption of which is in the following words, viz.:

" STATE OF NEW YORK:

" At a Court of Oyer and Terminer, held at the City and County Hall, in the city of Buffalo, in and for the county of Erie, on the 3d day of May, 1883.

" Present — Hon. CHARLES DANIELS, *Justice Presiding,* and
        " Hon. FAYETTE READ and SETH A. ABBOTT, *Justices of the Sessions.*"

The judgment, after making the usual formal recitals referring to the indictment, trial and conviction, concludes in these words:

" And (Bork) was thereupon, on the 3d day of May, 1883, sentenced to be imprisoned in the State prison at Auburn, at hard labor, for the term of five years.

" J. E. EWELL, *Clerk.*"

In all courts of record in this State it is the province, as well as the duty of the clerk, to keep a minute-book or record of the proceedings of the court, in which he states the day of trial, the name of the judge who presides, and also the names of his associates, when he has any; and this book, with all its entries, is, as a general rule, under the complete control of the court to which such entries relate.

We must conclude, therefore, that when the prisoner was sentenced, Fayette Read and Seth A. Abbott, two persons not legally members of the Court of Oyer and Terminer, were present and acting as members of the court, and deliberated with Mr. Justice DANIELS in preparing the judgment, which they together, all acting as members of the court, pronounced on the prisoner. These individuals were judicial officers — the members of another tribunal. We may take judicial notice of the fact, who are the members of the several courts of record in this State, and it is for us to understand from the record before us, that these individuals were the justices of the peace designated as members of the Court of Sessions, in and for the county of Erie, at the time judgment was pronounced in this case. As such officers were formerly members of the Court of Oyer and Terminer, and the change in the organization of that court had then but recently taken place, this circumstance most likely explains why they deemed it their duty and were permitted to act as members of the court when Bork was sentenced. Although the trial took place before the court, as organized under the judiciary act, the judgment on the verdict should have been pronounced by the court organized as the statute now provides. (*Ostrander* v. *The People*, 29 Hun, 513.)

The legal proposition presented by the learned counsel for the appellant, that the judgment is void for the reason that the court was not legally constituted, does not, in my opinion, admit of any

doubt. The court had jurisdiction of the subject-matter as well as the person of the prisoner; the trial and conviction were regular in all respects, and free from error. The question under consideration does not, accurately speaking, involve the jurisdiction of the court in which he was tried and sentenced. The precise question is, was the court legally organized when the judgment was pronounced? If there is anything settled in the jurisprudence of this State, it is that no man shall be condemned and punished by the judgment of an unauthorized tribunal. To create a judicial tribunal is one of the functions of government, and it is against public policy to recognize judgments and decrees of a self-constituted court. In civil actions the judgments of unauthorized judicatories are sometimes held binding on suitors, as mere arbitrations, when the proceedings are conducted with their consent, but never in criminal prosecutions, for the punishment that follows a conviction may, and often does, involve life and liberty, and is not limited to the loss of property. It is a maxim of the law that consent never confers jurisdiction. This applies as well to consent which creates a tribunal as to that which submits matter to a subsisting tribunal which is an utter stranger to it. (*Germond* v. *The People*, 1 Hill, 345,)

A court is as much disorganized and without power to act, when one or more unauthorized individuals participate in its deliberations and judgments, as when it acts without the presence of those who are necessary to constitute a quorum as required by some provision of positive law. The cases which I will now mention prove, as far as judicial decision can establish any proposition, that the tribunal which pronounced judgment against the prisoner on the verdict of conviction was illegally constituted and unknown to the law of the land.

In *Oakley* v. *Aspinwall* (3 Comst., 547) it was held that if any one of the members of a court is disqualified to sit in a particular case by reason of his consanguinity to one of the suitors, he cannot properly and legally act as a member of the court, though it should be with the express consent of all the parties in interest. This rule was applied in that case, where one of the members of the Court of Appeals was disqualified by reason of his relationship to one of the parties, although all the parties gave express consent and requested the disqualified judge to sit, and there was in fact a

quorum of the court without his presence. The judgment in which he participated was declared void and vacated on motion. In the opinion of the court the statute on the subject of the disqualification of judges was quoted and the provision of the statute is: "No judge of any court can sit as such in any cause to which he is a party or in which he is interested, or in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the parties." (2 R. S., 275, § 2; Reviser's Notes, 3 R. S., 694.) The court, in remarking upon the rule of the common law, and of the provisions of the statute, says, viz.: "After so plain a prohibition, can anything more be necessary to prevent a judge from retaining his seat in the cases specified? He is first excluded by the moral sense of all mankind; the common law next denies him the right to sit, and then the revisers of our law declared that they intended to embody this universal sentiment in the form of a statutory prohibition, and so they placed this explicit provision before the legislature who adopted it without alteration and enacted it as the law. The exclusion wrought by it is as complete as is in the nature of the case possible. The judge is removed from the cause and and from the bench; or if he will occupy the latter it must *be only as an idle spectator and not as a judge.* He cannot sit as such. The spirit and language of the law are against it. Having disqualified him from sitting as a judge, the statute further declares that he can neither decide nor take part in the decision of the causes as to which he is divested of the judicial function. Nor ought he to wait to be put in mind of his disability, but should himself suggest it, and withdraw as the judge, with great propriety, attempted to do in the present case. He cannot sit, says the statute. It is a legal impossibility, and so the courts have held it." (*Edwards* v. *Russell,* 21 Wend., 63; *Foot* v. *Morgan,* 1 Hill, 654.)

The statute applicable to the case we have in hand declares the Court of Oyer and Terminer shall be held by a justice of the Supreme Court, *without an associate.*

In the case of *The People* v. *Shaw* (63 N. Y., 36) it was held that if a quorum of the court, as provided by the statute which created it, was not present when the verdict of the jury was received, it was error, and the judgment pronounced thereon was

reversed. In the opinion of the Supreme Court the same view was taken, and is reported in 3 Hun, 272.

In *Cancemi's case* (18 N. Y., 128), he consented to be tried by a jury of eleven qualified jurors, and was convicted of the crime of murder. The Supreme Court sustained the conviction, on the ground that the prisoner could waive his constitutional right to be tried by a jury of twelve. The Court of Appeals reversed the judgment and set aside the conviction, and ordered a new trial, holding that the prisoner could not waive his right to be tried by a jury composed of the number provided by the constitution of the State, and the verdict of conviction was a nullity. The court further held that when an issue was joined on an indictment, the trial must be by the tribunal and in the mode which the constitution and the laws provided, without any essential change ; that the public officer prosecuting for the people has no authority to consent to such a change, nor has the defendant.

On the authority of these cases, the judgment appealed from must be held erroneous and void. The following cases are cited as authority on these propositions : *Blend* v. *The People* (41 N. Y., 604); *The People* v. *Dohring* (59 id., 374); *Hinman* v. *The People* (13 Hun, 266 ;) *Chambers* v. *Clearwater*, (1 Keyes, 310); *Foot* v. *Morgan* (1 Hill, 654); *Germond* v. *The People* (1 id., 345); *The People ex rel. Tweed* v. *Liscomb* (60 N. Y., 571).

As the defect in the organization of the court deprived it of the character intended by the law creating it, this court must take notice of the defect, although the appellant on this appeal, for the first time, makes the objection to the validity of the sentence. (*People* v. *Petrea*, 65 How. Pr., 59 [Ct. of App. Dec.].)

For the reason that the judgment is a nullity, it cannot stand and must be reversed. The question now arises whether this court has power to give a new judgment on the verdict ; and if not, must the record be remitted to the Oyer and Terminer with directions to proceed on the conviction and pronounce the appropriate sentence on the verdict, or should the judgment be reversed, and a new trial ordered, or the prisoner absolutely discharged ? The Code of Criminal Procedure has abolished writs of error, and substituted an appeal as the only mode of reviewing a judgment in a criminal action. (Sec. 515.)

As the judgment in this action was pronounced after the Code went into operation, the record is brought before us on appeal as provided by section 517. By the Revised Statutes, as amended by chapter 226, Laws of 1863, relating to writs of error in criminal cases, it was provided : " If the Supreme Court shall affirm such judgment, it shall direct the sentence pronounced to be executed, and the same shall be executed accordingly. If the Supreme Court shall reverse the judgment rendered, it shall either direct a. new trial or that the defendant be absolutely discharged, according to the circumstances of the case. Provided, however, that the appellate court shall have power upon any writ of error, when it shall appear that the conviction has been legal and regular, to remit the record to the court in which such conviction was had, to pass sentence thereon as the said appellate court shall direct." (2 R. S., § 24, m. p. 741.) There can be no doubt but that this section is repealed, and the provisions of the Code on the same subject substituted in lieu thereof. Section 962 declares that the provisions of the Code apply to criminal actions, and to all other proceedings in criminal cases, which are therein provided for from the time when the same took effect (which was September 1, 1881); that all such actions and proceedings theretofore commenced must be conducted in the same manner as if the Code had not been passed. Although this action was commenced and a trial had before the Code went into operation, the provisions of the same relating to giving judgment on appeal are applicable, because the judgment on the verdict and the appeal therefrom are proceedings in the action instituted after the Code took effect, and are not such proceedings as are embraced in· the exception as mentioned in the section.

Entertaining jurisdiction on this appeal, at the instance of the appellant, is giving a construction to the statute in accordance with these views. Chapter 4 of the Criminal Code contains provisions relating to the power of the appellate court to give judgment on disposing of the appeal. The directions are, after hearing the appeal, the court must give judgment without regard to technical errors or to exceptions which do not affect the substantial rights of the parties. The next section (sec. 543) provides: "Upon hearing the appeal the appellate court may, in cases where an erroneous judgment has been entered upon a lawful verdict,

correct the judgment to conform to the verdict. In all other cases they must either reverse or affirm the judgment appealed from, and in cases of reversal may, if necessary or proper, order a new trial." If the judgment against the defendant be reversed without ordering a new trial the appellate court must direct his discharge. If the judgment be affirmed the original judgment must be carried into execution as the appellate court may direct, and if the judgment be corrected *the corrected judgment may be carried into execution as the appellate court may direct.* There is also the further provision that when a judgment in the appellate court is given it must be entered in the judgment-book and a certified copy of the entry forthwith remitted to the clerk, with whom the original roll is filed, and the papers returned to the appellate court must there remain a record and not be remitted to the court below.

The verdict in this case was in every respect valid and legal, and I am of the opinion that the judgment pronounced thereon is void. The question now arises, has this court on correcting the error and setting aside the void judgment the power and authority to pronounce an appropriate judgment on the verdict as it stands. I am of the opinion that the provisions of the Criminal Code, which we have mentioned, confer such power, and that it is our duty to give the judgment which the law pronounces on the verdict.

Prior to the act of 1863 if an erroneous judgment was pronounced on a legal and regular conviction on the trial of a good indictment, and the judgment was reversed on a writ of error in an appellate court, such court had no power to remit the proceedings to the court below to proceed on the verdict and give the appropriate judgment, nor could the appellate court give a new judgment, but under the provisions of the statute and the law as it then stood the defendant was entitled to an absolute discharge on a reversal of the judgment which had been given against him. (*Shepherd* v. *The People*, 25 N. Y., 406; *McKee* v. *The People*, 32 id., 239; *Ratzky* v. *The People*, 29 id., 127; *The People* v. *Taylor*, 3 Denio, 97; *O'Leary* v. *The People*, 4 Parker's Crim. R., 187.)

The decision in *People* v. *Shepherd*, was founded on the idea that there was not, previous to the act of 1863, any authority in the appellate court, on the reversal of a judgment, wrongfully pronounced, when the trial and conviction was regular, either to

pronounce the proper judgment, or to remit the record to the court where the sentence was pronounced, with directions to that court to pass the appropriate sentence, and that in the absence of any such authority upon the reversal of the judgment, the prisoner was entitled to his discharge.

It was, as we think, the clear intent of the legislature in amending section 24 of the Revised Statutes, by adding the provision contained in the act of 1863, to retain the verdict when the trial and conviction was regular and legal on a good indictment when the judgment was reversed and set aside, because of some error in the form or substance thereof. To accomplish this end, specific power was given the appellate court to formulate the appropriate judgment and to remit it, with the record, to the court in which conviction was had, with directions to pass sentence on the verdict in the form and to the effect as prepared by the appellate court.

In Ratzky's case the judgment was reversed because of error in the form and effect of the same, and as no error occurred on the trial and the indictment was good and sufficient, the Court of Appeals prepared the judgment which should be pronounced on the verdict and sent the same with the record to the court below to be pronounced on the defendant.

If we were reviewing the judgment in this case on a writ of error issued under the provisions of the Revised Statutes, we should not on reversing the judgment discharge the defendant nor award him a new trial, but should formulate a new sentence and direct the Oyer and Terminer to pronounce the same. We are entirely satisfied that it was the purpose of the legislature in adopting section 242 and 243 of the Criminal Code, to keep and preserve the verdict in all cases where the same is lawful, and if an erroneous judgment has been pronounced thereon by the trial court on appeal therefrom, then that the appellate court should give the proper judgment.

There is no provision in the statute as it now stands for remitting the record to the court below, with directions to that court to proceed anew and pronounce the appropriate sentence. Without a statute on the subject conferring the power, this court is without authority to give such directions, and the court below has none to proceed anew on the subject. Unless the statute does confer on

this court the power to give a new judgment, on the reversal of an erroneous one, when the verdict is lawful, then in every such case the defendant is entitled to an absolute discharge, for the reason that the trial and conviction already had would be a complete bar to another trial and conviction. (*Shepherd* v. *The People, supra; McKee* v. *The People, supra.*)

Authority full and complete is conferred on this court to correct an erroneous judgment and to conform it to the judgment when the judgment is lawful. But, it is said, as this judgment is void, it cannot correctly be held erroneous within the meaning of the statute, so as to bring the same within its provisions. I do not concur in the suggestion, and on the contrary believe the judgment erroneous as well as void within the sense and meaning of the statute, so that we may give the appropriate judgment on the verdict. A judgment may be erroneous and not void, and it may be erroneous, *because* it is void. It is within the power of the legislature to confer on a court, separate and distinct from the trial court, the right to pronounce sentence on a verdict convicting the accused.

A judgment now given by this court on the verdict will be, it is true, a new judgment, to stand in the place of the present void judgment. So are all corrected and modified judgments in criminal or civil actions, in a certain sense, new judgments. Suppose a sentence wholly unauthorized by law, be pronounced on a legal verdict by a competent and duly organized court, the same is erroneous and void, for the reason that the same is without sanction of law. On appeal therefrom, this court has the undoubted right, under the provisions of the present statutes, to correct the same and conform it to the verdict. In doing this the court does make up and give a new judgment in every respect. No part or feature of the void judgment can be retained. The judgment now under consideration is erroneous and void, in the same sense as in the case supposed, but for a different reason. The phrase "erroneous judgment," as used in section 543, should be considered to embrace void judgments, as well as those which are merely erroneous, and the power to correct judgments and conform them to the verdict should be held to include those that are erroneous because they are void. It cannot be doubted but such

was the intention of the legislature. · It cannot reasonably be supposed that the legislature was ignorant of the well-established rule of law, that if there has been a legal conviction on a good indictment, the accused cannot be re-tried on the same indictment after an erroneous judgment on the verdict has been reversed and set aside, nor can it be believed that in codifying the law on this subject it did not intend to preserve the provisions of the Revised Statutes, conferring on the courts of review the power to give a proper judgment on a legal verdict, on reversing an erroneous and void judgment, and thus to secure the punishment of guilty persons who have been legally convicted, and not allow law-breakers to escape altogether, by reason of error in pronouncing the judgment of the law on a just conviction.

The form of the verdict is set forth in the record, and if for any reason the same is incomplete and does not pass upon all the issues as required by the statute, the question was properly brought to the attention of the trial court on the motion in arrest of judgment. It is now argued that the motion should have been allowed and the judgment arrested for the reason that the verdict did not contain any finding or statement of the loss sustained from the offense committed by the defendant as required by the statute under which the indictment was found.

It is not claimed by the learned counsel for the defendant that a request was made on the trial, by the people or the defendant, that the jury find and state with their verdict the amount of the loss sustained by the city. The fact which may be found by the jury under the statute, is no part of the verdict. It must be stated with the verdict when the fact is found. The language of the statute is: "When rendering a verdict of guilty upon the trial of any person indicted under this act, the jury *may find* and state· with their verdict the amount of loss resulting from the offense of the defendant."

The offense which the statute defines and declares to be punishable may exist, although the municipality whose money or property has been wrongfully converted has not suffered any loss. After the offense became complete, by a wrongful conversion, a full restoration may have been secured, with or without the assent of the wrong-doer.

I am unable to discover that it was the intention of the legislature that, in every instance when a conviction takes place, the jury must pass on the question of loss, and consequently hold, that if there be omission so to do, the verdict is incomplete, and for that reason a mis-trial must be adjudged. The statute is not imperative and peremptory in terms; the language is permissive. Although the act relates wholly to matters of public concern, this provision of the statute should not be regarded as imperative. Should the defendant plead guilty, he would then be legally convicted, and the court could lawfully pronounce sentence without any finding by a jury as to the extent of the loss.

Let it be conceded that this provision of the statute was inserted solely in the interest of the accused, that does not seem to be a sufficient reason for requiring a construction to be given to the statute, making it the duty of the court on every trial to instruct the jury to pass on the question of loss.

This is like the case where the sheriff or other officer is empowered to let to bail. Before such an officer is derelict in duty he must be requested to perform the duty required. We put this with that class of cases, which we do not deem it necessary to cite, which hold, that there must be a request made of officers or public bodies to act and discharge the duty imposed on them by law, before it can be said that they have not discharged their official duty, to the injury of the complaining person.

I am of the opinion that the verdict was complete, and that there was not a mis-trial because the jury failed to find the extent of the loss sustained by the city.

Judgment and orders affirmed.