90 N.Y.2d 982 (1997)
688 N.E.2d 491
665 N.Y.S.2d 617
The People of the State of New York, Respondent,
v.
Victor Monroe, Appellant.
Court of Appeals of the State of New York.
Argued September 8, 1997
Decided October 23, 1997.
Susan E. Kriete, New York City, and Daniel L. Greenberg for appellant.
Charles J. Hynes, District Attorney of Kings County, Brooklyn (Thomas M. Ross and Roseann B. MacKechnie of counsel), for respondent.
Chief Judge KAYE and Judges BELLACOSA, SMITH, LEVINE, CIPARICK and WESLEY concur; Judge TITONE Judge TITONE dissents and votes to reverse in an opinion.
*983 MEMORANDUM.
The order of the Appellate Division should be affirmed.
Defendant was convicted, after a jury trial, of second degree murder in the shooting death of an off-duty correction officer in Brooklyn. On five different occasions during the three-week trial, the court permitted the jury to examine various exhibits which had been received in evidence. Each of these viewings occurred in the jury room outside the presence of the court, the attorneys and defendant, but with defendant's awareness and without objection. Defendant argues that this procedure was reversible error. Under the circumstances presented here, we disagree.
*984 Contrary to defendant's contention, the Judge's absence from these viewings did not constitute an error affecting "the organization of the court or the mode of proceedings proscribed by law" which can be reviewed on appeal even absent a timely objection in the trial court (People v Patterson, 39 N.Y.2d 288, 294-296, affd 432 US 197). It is true that an integral part of a defendant's right to a jury trial is the supervision and active participation of a Judge, and when a Judge's absence from trial proceedings prevents performance of an essential, nondelegable judicial function reversal is required (see, People v Toliver, 89 N.Y.2d 843, 844-845; People v Torres, 72 N.Y.2d 1007, 1008-1009; People v Ahmed, 66 N.Y.2d 307, 311-312).
In this case, however, the jury examined the exhibits only after they had been received in evidence. Before each viewing and at other times during the trial, the Judge admonished the jury not to discuss the evidence or the case itself, which was sufficient to dispel the possibility of premature deliberation during the viewings. As a result, the viewings did not require any rulings or instructions and did not implicate any of the Judge's substantive roles in conducting the trial. The alleged error therefore does not fall within that narrowly drawn class of fundamental defects immune from the preservation requirement. Defendant at no time voiced any objection to the viewings, and when he finally did lodge a protest to a prospective viewing, it was on different grounds than advanced here. Thus, defendant's claim is unpreserved for this Court's review.
Defendant's alternative claim, that he was denied his right to be present at the viewings, must also be rejected. Criminal defendants have the right to be present at all material stages of trial, which include the introduction of evidence (see, CPL 260.20; People v Williams, 85 N.Y.2d 945, 947). Moreover, a defendant has the right to be present at ancillary proceedings where he or she may have "something valuable to contribute" (People v Morales, 80 N.Y.2d 450, 456), or where defendant's exclusion could "substantially affect the ability to defend against the charge" (People v Mitchell, 80 N.Y.2d 519, 527).
Given that the exhibits had already been received in evidence, the viewings here were at best an ancillary proceeding. Since defendant's potential contribution to the viewings was minimal, and on this record defendant's absence did not compromise his ability to advance his position or counter the People's theory, defendant's presence was not required.
TITONE, J. (dissenting).
I dissent. The court's decision to *985 permit  and even encourage  the jurors informally to view evidentiary exhibits during times when neither the Judge nor the parties were present was an unwarranted departure from acceptable trial practice that, in both form and substance, deprived defendant of his constitutional and statutory right to be present at all material stages of trial (see, Snyder v Massachusetts, 291 US 97, 105-106; People v Ciaccio, 47 N.Y.2d 431; CPL 260.20). Since that right is one that must be enforced by the appellate courts even in the absence of a timely and specific objection or a showing of actual prejudice (see, People v Antommarchi, 80 N.Y.2d 247, 250), the judgment of conviction should be reversed.
It is beyond dispute that the reception of evidence is a material stage of trial at which the defendant's presence is required (e.g., People v Ciaccio, supra, at 436). It is clearly a "core" stage of the criminal proceeding as to which the right to be present "serves a symbolic function" as well as affording the defendant an opportunity for meaningful participation (People v Morales, 80 N.Y.2d 450, 456; see, People v Williams, 85 N.Y.2d 945, 947; People v Sprowal, 84 N.Y.2d 113, 116; People v Sloan, 79 N.Y.2d 386, 392).
The majority does not take issue with this principle, but instead attempts to circumvent it by relying on the fact that "the jury examined the exhibits only after they had been received in evidence." (Majority mem, at 984.) This analytical disposition, however, represents an overly formalistic  and entirely unrealistic  view of trial practice.
The formal reception of evidentiary exhibits occurs when they are tendered by counsel and determined to be legally admissible by the court. At that point, the exhibits are technically available for review and inspection by the jury. However, depending on their size and nature, the exhibits may not actually be examined by the jurors at that time. Instead, they may be passed around for close viewing immediately after the formalities of admission are completed or the viewing may be postponed for some later, more convenient time in the trial. In this case, for example, the record makes clear that on at least two occasions, the exhibits were admitted but were not actually seen by the jurors until the unsupervised viewings that are the subject of this appeal.
Given that the critical event for purposes of the fact-finding process is the jury's actual exposure to the exhibits rather than the time when they are technically deemed "admitted" by the court, it follows that the defendant's due process and *986 statutory right to be present attaches at the former, as well as the latter, time. Indeed, it seems illogical and unreasonable to suggest that the defendant must be present during the formal tender and acceptance of exhibits for admission, but that his presence may be dispensed with when those exhibits are actually shown to the jury. Certainly, the jurors' examination of the exhibits presents an occasion for meaningful participation by the accused, since their reactions are observable events that may well affect the defense's trial strategy (see, People v Williams, supra, at 947 [defendant's presence required where he or she "may assist counsel in evaluating and acting upon events which unfold during the course of the proceeding"]). For example, a defendant may notice a particular juror lingering for an unusually long time over a particular exhibit and, as a consequence, may suggest to his trial counsel that further exploration of the exhibit's significance is required.
Even apart from the clear violation of defendant's right to be present, the procedure utilized in this case for the viewing of exhibits represents such a drastic deviation from the normal organization of the court and mode of proceedings (see, People v Patterson, 39 N.Y.2d 288, 295), that the basic fairness of the proceeding itself is called into question. It is fundamental that "the supervision of a Judge is an important and nonwaivable element" of the right to a jury trial (People v Thompson, 90 N.Y.2d 615, 621 [decided today]; see, People v Toliver, 89 N.Y.2d 843; People v Ahmed, 66 N.Y.2d 307). Contrary to the majority's suggestion, the Trial Judge's presence is required for all judicial (as distinguished from ministerial) functions, not just those that are labeled "essential" (majority mem, at 984). Although the Trial Judge in this case gave the usual admonitory instructions before  although not necessarily immediately before  the unsupervised viewings occurred, there was still a need for judicial presence and supervision, since unexpected events, such as blurted-out comments or other spontaneous juror reactions, could have occurred, necessitating the Judge's substantive intervention. Of course, because the viewings in this case were unobserved and unrecorded, there is no way of knowing whether anything untoward or prejudicial actually did occur.
I would note, moreover, that the informality of the procedure that the trial court sanctioned gives rise to a very realistic concern that substantive irregularities did, in fact, occur. For example, at one point, the Judge told the jurors that those who had not seen the exhibits earlier would "have a chance" to do so during an extended lunch break. The court's casual *987 approach suggested that the viewing was optional, raising the possibility that the evidence was viewed by some, but not all of the jurors  an infirmity that could require a mistrial (see, People v Adams, 179 AD2d 764 [juror grossly disqualified under CPL 270.35 where it was possible that he had missed portions of the testimony due to his dozing]).
Given the level of impropriety here and the risk of prejudice it created, it is unfortunate that the majority has chosen to sanction rather than condemn this Judge's casual practice with regard to predeliberation viewings of exhibits. One can only hope that the majority's decision to uphold the conviction in this case does not serve to encourage the use of periods when court is not formally in session for such viewings and other substantive procedures. Because I view such experimentation as inappropriate and likely to corrupt the "mode of proceedings" that has evolved over time to assure fair trials, and because I believe that this particular defendant's right to be present was violated, I conclude that the proper appellate remedy is to reverse the judgment of conviction and to direct a new trial.
Order affirmed in a memorandum.