OPINION OF THE COURT
 

 Smith, J.
 

 At issue in this case is whether substitution of the presiding Judge during a jury trial violated the defendant’s right to due process under the New York State Constitution. Here, the Trial Judge’s serious illness rendered him unable to continue with
 
 *617
 
 the trial and he was replaced by a Judge who diligently familiarized himself with the record of the proceedings. Under the circumstances, we conclude that a mistrial was not required and the court could properly exercise its discretion to deny defendant’s motion. The order of the Appellate Division should be affirmed.
 

 The prosecution’s evidence was that on May 23, 1992, defendant approached the female complainant in Queens, New York, and stabbed her in the thigh. At knifepoint, defendant forced her to walk with her eyes closed to his apartment where he blindfolded her and removed her jewelry and clothes. During the next 20 hours, the woman was beaten, sodomized and raped by defendant and his neighbor. The victim managed to get a brief look at defendant and her surroundings when her blindfold slipped as he slept.
 

 Defendant eventually took the young woman outside to an alley and abandoned her. She made her way to the police and was able to assist the officers in locating defendant’s apartment. A search of the apartment pursuant to a warrant uncovered personal effects, ropes and bloody sheets which linked complainant to the scene. After she identified the defendant in a lineup, he was arrested and charged.
 
 [1]
 

 On January 14, 1993, a jury trial was commenced in Supreme Court. On January 25, 1993, the People delivered an opening statement and called the victim’s father, the victim’s friend and a gas station attendant working on the night of the incident as witnesses. Over the next several days, testimony was given by the victim, her examining physician, a serologist and the arresting officer. On February 1, 1993, the Justice’s law secretary informed the People and defendant that the Justice had been unexpectedly hospitalized the day before and was scheduled to undergo surgery. The parties were then told that the Justice would be unavailable to continue with the trial until some time in April. Since all of the evidentiary motions filed at that point had been ruled upon, there were no outstanding matters pending before the court.
 

 The case was then reassigned to á new Justice. Defendant moved for a mistrial based upon the incapacitation of the prior
 
 *618
 
 Judge. The new Justice heard oral argument on the mistrial motion and the defendant consented to this Justice presiding over the remainder of the case should the mistrial motion be denied. Noting that the grounds presented on the mistrial motion would also warrant the granting of "a motion to set aside any guilty verdict” that may be returned (158 Misc 2d 397, 400), the Justice reserved decision on the mistrial motion.
 

 On February 4, 1993, the People rested without presenting any additional testimony. At this point, the new Justice acknowledged that he had received most of the transcript and expected to receive the remaining portion later that day. The Justice then adjourned the case until the following Monday. Trial resumed on February 8, 1993, and the Justice noted for the record that he had read the entire transcript of the trial.
 

 On February 9, 1993, defendant testified on his own behalf and denied having engaged in sexual intercourse with complainant that night. On rebuttal, the People recalled the arresting officer who testified that, after defendant had been informed of his
 
 Miranda
 
 rights and he had voluntarily waived his right to counsel, defendant admitted to having sex with the victim repeatedly on the night in question. Both sides rested.
 
 [2]
 

 Following a charging conference, the substitute Justice instructed the jury without objection from the defendant. The jury convicted the defendant of kidnapping in the first degree, five counts of rape in the first degree, four counts of sodomy in the first degree, assault in the second degree, and robbery in the third degree. Defendant renewed the subject of his mistrial motion, which had not been ruled upon, in a motion to set aside the verdict. Supreme Court denied defendant’s motion based upon the Judge substitution
 
 (see, People v Thompson,
 
 158 Misc 2d 397,
 
 supra),
 
 and sentenced defendant to an aggregate term of 1191/2 years to life.
 

 On appeal, defendant argued that a mistrial was required due to the incapacity of the original Judge during the trial regardless of prejudice. The Appellate Division affirmed and held that "there is no per se constitutional right to have the
 
 same
 
 Judge preside throughout a criminal defendant’s trial” (222 AD2d 156, 161 [emphasis in original]). A Judge of this Court granted leave to appeal.
 

 
 *619
 
 I
 

 The right to trial by jury is guaranteed by both the Federal and State Constitutions (US Const 6th Amend; NY Const, art I, § 2) and is implemented by statute (CPL arts 260, 270). This Court has noted that the guarantee of a jury trial provided in the New York State Constitution refers to rights that "existed at common law”
 
 (People v Ahmed,
 
 66 NY2d 307, 311). We have also held that, "when issue is joined upon an indictment, the trial must be by the tribunal and in the mode which the constitution and laws provide, without any essential change”
 
 (Cancemi v People,
 
 18 NY 128, 138).
 

 Some of our earliest cases indicated that the substitution of a Judge during trial was impermissible.
 
 [3]
 
 In
 
 Blend v People
 
 (41 NY 604, 606), for example, one of the three Justices "indispensable .to constitute a legally organized court” went home after the impaneling of the jury "to suit [his] convenience.” The Justice was replaced by another who was "qualified to act” and the trial continued with the newly constituted presiding panel through sentencing. This Court reversed the conviction and stated, "it is not for us to speculate in regard to the probable injury which might result from the substitution * * *; it is sufficient that the prisoner had a right to insist that his trial should proceed before the same court before which it was commenced” (41 NY, at 606).
 

 Notably, the Court equated the error with the " 'substantial constitution of the legal tribunal, and the fundamental mode of its proceeding’ ” which could not be waived
 
 (id.,
 
 at 607, quoting
 
 Cancemi v People,
 
 18 NY, at 136). The Court noted that the issue of resulting prejudice was not dispositive since there was no way to ascertain "what influence [the original Judge] might have exercised during the trial, or in determining the punishment to be inflicted upon the prisoner”
 
 (id.,
 
 at 606). Thus, as of the late nineteenth century, midtrial replacement of a Judge was regarded as an error of constitutional magnitude.
 

 II
 

 At one point, Federal authorities were in accord with
 
 Blend (see, Freeman v United States,
 
 227 F 732, 759-760,
 
 mod denied
 
 
 *620
 
 237 F 815). Such decisions were predicated upon the nonwaivability of the right to a jury trial which was then unquestioned. However, in
 
 United States v La Sorsa
 
 (480 F2d 522,
 
 cert denied
 
 414 US 855), the Second Circuit held that it was not bound by Federal precedents such as
 
 Freeman
 
 because that case had been based on a principle which had been subsequently repudiated by the United States Supreme Court — the principle that a defendant may not waive his right to a jury trial
 
 (id.,
 
 at 531, citing
 
 Patton v United States,
 
 281 US 276).
 

 Today, the Federal Rules of Criminal Procedure provide guidelines for circumstances in which a Federal Judge becomes disabled during trial. Rule 25 (a) provides:
 

 "If by reason of death, sickness or other disability the judge before whom a jury trial has commenced is unable to proceed with the trial, any other judge regularly sitting in or assigned to the court, upon certifying familiarity with the record of the trial, may proceed with and finish the trial” (Fed Rules Crim Pro, rule 25 [a];
 
 see also,
 
 ABA Standards for Criminal Justice § 15-3.3 [3d ed 1996]).
 

 Thus, under the Federal rules, substitution of a Judge during a jury trial is permissible when three elements are met: (1) the original Judge must be unable to continue with the trial for reasons sufficiently more serious than mere convenience; (2) the substitute Judge must regularly sit in a court of competent jurisdiction; and (3) the new Judge must certify familiarity with the record of the proceedings
 
 (see,
 
 25 Moore, Federal Practice ¶ 625.04 [1] [3d ed]).
 

 Defendant virtually concedes that substitution of a Judge during trial pursuant to the procedures outlined in rule 25 (a) would not violate the due process guarantees under the Federal Constitution. However, he urges this Court to adopt a more stringent standard under the State Constitution. We decline to do so.
 

 Ill
 

 New York State has no direct analogue to rule 25 of the Federal Rules of Criminal Procedure.
 
 [4]
 
 Defendant contends that the rights guaranteed under the State Constitution and the procedural proscriptions of Judiciary Law § 21 prohibit the
 
 *621
 
 adoption of procedures similar to those outlined in rule 25 (a) in New York. Although we have noted that the protections afforded by the New York State Constitution may sometimes go beyond the dictates of the Federal due process standard
 
 (see, e.g., People v Vilardi,
 
 76 NY2d 67), there is no State constitutional mandate for a jury trial before the same Judge from start to finish.
 

 There is no question that the supervision of a Judge is an important and nonwaivable element of the right to a jury trial. Indeed, we have repeatedly reaffirmed the proposition that "the presence and active supervision of a judge constitute an integral component of the common-law right”
 
 (People v Ahmed,
 
 66 NY2d, at 312;
 
 see also, People v Toliver,
 
 89 NY2d 843). However, the question presented here is whether this constitutional mandate requires the presence of the
 
 same
 
 Judge from the commencement of trial to its conclusion.
 

 Due process claims under the Federal and New York Constitutions "require the balancing of factors — ’an evaluation of the interests of the parties to the dispute, the adequacy of the contested procedures to protect those interests and the government’s stake in the outcome’ ”
 
 (People v Scalza,
 
 76 NY2d 604, 610, quoting
 
 La Rossa v Abrams,
 
 62 NY2d 583, 588). Of course, the needs of judicial economy may not override a defendant’s constitutionally protected rights. However, we find nothing in the requirements of due process that indicates that the midtrial substitution of a Judge rises to the level of a per se constitutional violation. Thus, a jury trial before the same Judge does not represent a nonwaivable common-law right guaranteed by the State Constitution.
 

 Turning to defendant’s remaining contention, Judiciary Law § 21 provides that, except in an appellate court, a Judge "shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge.” This provision does not prevent the substitution of a Judge in a jury trial since the ultimate determination of guilt or innocence belongs to the jury and not the Trial Judge.
 

 Generally, a Judge may be substituted for another if the original Judge becomes incapacitated during a jury trial, as long as the substitute indicates on the record the requisite familiarity with the proceedings and no undue prejudice occurs to the defendant or the People. In this case, defendant has demonstrated no prejudice stemming from the substitution of
 
 *622
 
 a Judge during trial and we hold that the trial court properly exercised its discretion in denying defendant’s motion for a mistrial on such grounds.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Levine, Ciparick and Wesley concur.
 

 Order affirmed.
 

 [1]
 

 . Defendant was charged with kidnapping in the first degree, 7 counts of rape in the first degree, robbery in the first degree, 12 counts of sodomy in the first degree, 18 counts of sexual abuse in the first degree, 2 counts of assault in the second degree, criminal possession of a weapon in the fourth degree and criminal possession of stolen property in the fifth degree.
 

 [2]
 

 . In a pretrial hearing pursuant to
 
 People v Huntley
 
 (15 NY2d 72), the Court determined that defendant’s
 
 post-Miranda
 
 statements were voluntary. However, the People did not introduce these statements in their direct case.
 

 [3]
 

 .
 
 See, e.g., People v Bork,
 
 96 NY 188, 198 (1884) ("It is undoubtedly true that the judges of a criminal court before which a trial is commenced, cannot he changed during its progress”);
 
 People v McPherson,
 
 74 Hun 336, 337 (1893) ("The proposition that a criminal case cannot be partly tried before one magistrate and partly before another seems to me too clear to need argument or citation of authority to sustain it. When the trial of a case is once commenced it must proceed to the end before the same court and jury”).
 

 [4]
 

 . However, several other States have enacted statutes or rules similar to rule 25 (see, Annotation,
 
 Substitution of Judge in State Criminal Trial,
 
 45 ALR5th 591).