[992 NE2d 1059, 970 NYS2d 716]

The People of the State of New York, Respondent, v Grady Hampton, Appellant.

Argued April 23, 2013; decided June 4, 2013

278

## POINTS OF COUNSEL

*Frankie & Gentile, P.C.*, Mineola (*Joseph A. Gentile* of counsel), for appellant. I. It was error and a violation of Judiciary Law § 21 for a substitute judge to adjudicate and decide a trial order of dismissal motion which had been argued and litigated before the original trial court judge who subsequently recused himself from the litigation. (*Smith v State of New York*, 214 NY 140; *Evans v State of New York*, 29 AD2d 611; *Matter of Connelly-Logal v West*, 272 AD2d 920; *Gayle v Port Auth. of N.Y. & N.J.*, 6 AD3d 183; *Michel v Michel*, 31 AD2d 313; *People v Cameron*, 194 AD2d 438; *State of New York v General Elec. Co.*, 215 AD2d 928; *People v Hooper*, 22 AD2d 1006; *Clover-East*

*Assoc. v Bachler*, 23 AD2d 620; *Morris-Imhoff v State of New York*, 22 Misc 3d 545.) II. The testimony of Shamiquia Nelson is legally insufficient to support the conviction for homicide and weapons possession in this case. (*People v Danielson*, 9 NY3d 342; *People v Brun*, 58 AD3d 862; *People v Acosta*, 80 NY2d 665; *People v Diaz*, 201 AD2d 580; *People v Carthrens*, 171 AD2d 387; *People v Garcia*, 237 AD2d 42; *People v Contes*, 60 NY2d 620; *People v Arroyo*, 54 NY2d 567.)

*Kathleen M. Rice, District Attorney*, Mineola (*Barbara Kornblau, Tammy J. Smiley* and *Judith R. Sternberg* of counsel), for respondent. I. To the extent defendant's arguments concerning the legal sufficiency of the evidence were not raised during trial, they are unpreserved for review as a matter of law. In any event, the evidence was legally sufficient to prove defendant's guilt beyond a reasonable doubt. (*People v Hawkins*, 11 NY3d 484; *People v Hines*, 97 NY2d 56; *People v Gray*, 86 NY2d 10; *People v Santi*, 3 NY3d 234; *Jackson v Virginia*, 443 US 307; *People v Ramos*, 19 NY3d 133; *People v Bleakley*, 69 NY2d 490; *People v Malizia*, 62 NY2d 755; *People v Calabria*, 3 NY3d 80; *People v Jackson*, 65 NY2d 265.) II. Defendant has waived and failed to preserve for review his argument that even purely legal issues may not be determined by a substitute judge. In any event, Judiciary Law § 21 did not preclude the substitute judge from ruling on purely legal matters raised in defendant's CPL 330.30 motion. (*People v Danielson*, 9 NY3d 342; *Cohen v Hallmark Cards*, 45 NY2d 493; *People v Brun*, 58 AD3d 862; *People v Spellman*, 233 AD2d 254; *People v Beecher*, 225 AD2d 943; *People v Turner*, 212 AD2d 1000; *People v Contes*, 60 NY2d 620; *People v Sabella*, 35 NY2d 158; *People v Carter*, 63 NY2d 530; *Gayle v Port Auth. of N.Y. & N.J.*, 6 AD3d 183.)

## OPINION OF THE COURT

READ, J.

We hold that Judiciary Law § 21 does not bar a substitute judge from deciding a question of law presented in a motion argued orally before another judge so long as a transcript or recording of the prior argument is available for review, and "the substitute indicates on the record the requisite familiarity with the proceedings and no undue prejudice occurs to the defendant or the People" (*People v Thompson*, 90 NY2d 615, 621 [1997]). Put another way, section 21 does not mandate a mistrial or that the pending motion be reargued orally in front of the substitute judge.

## I.

On December 18, 2007, defendant Grady Hampton was at the house in Uniondale, New York where he lived with family members and his girlfriend of five years, Martinique (Nikki) G. After getting off from work at 4:00 p.m., Nikki returned to the house to get ready for her night school class at 5:45 p.m. She had intended to drive defendant's car, but the tank was low on gas, and defendant would not give Nikki money to fill it up. In front of defendant, in the bedroom they shared, Nikki telephoned Kareem S. (Kareem), a friend since childhood. Cell phone records show this call was made at 4:57 p.m.

Nikki asked Kareem if he would give her a lift to her class, which he agreed to do. About a year before, while Nikki was dating defendant, she had engaged in a short-lived affair with Kareem. Defendant, who had heard rumors of this sexual relationship, left the room before Nikki finished the phone call. There was no love lost between defendant and Kareem; Nikki acknowledged they exchanged "dirty looks" when they encountered one another.

Kareem arrived in short order to pick up Nikki. There were two passengers in his car—his then girlfriend, Sharnae M. (Sharnae), who sat in the front passenger seat, and a friend, Joel D. (Joel), who sat in the backseat, directly behind Sharnae. Kareem parked across the street from defendant's house; either shortly before or just after arriving, he called Nikki on his cell phone to alert her he was there. Cell phone records show this call was placed at 5:03 p.m.

Nikki walked across the street to Kareem's car. Kareem removed his jacket and other items from the backseat to make room for Nikki and her belongings, which she placed there; he opened the trunk of the car. Meanwhile, Nikki walked back across the street to defendant's parked car to retrieve her pocketbook. As she put the key into the car lock, she heard three or four gunshots and ducked down.

When the shooting stopped, Nikki saw Kareem staggering with his hands up before falling to the ground. Sharnae and Joel, who had remained inside Kareem's car, also heard the gunshots. Joel heard Kareem say, "yo, yo, chill, chill" as he stumbled backwards. Through the rear window (the trunk was still open, narrowing his field of view), Joel glimpsed a tall, thin figure, dressed all in black, including a black hoodie, running away from the car. Later that evening, Sharnae, while seated in

a police car, saw defendant walking down the street and into a house a few doors down from his own. He sported an Afro and was wearing a black hoodie.

Kareem was taken by ambulance to the hospital, where he was pronounced dead. He suffered gunshot wounds to the chest, back, and buttocks; the shots to his chest and back, both described as "lethal" by the medical examiner, perforated his heart and lungs. The chest wound was inflicted from a distance of an inch or less. Kareem was 19 years old.

Shamiquia N. (Shamiquia) saw defendant on the day of the shooting, both before and later, when he arrived at the house where she was living with her boyfriend and his family. This residence is located a few doors down from defendant's house. Defendant had changed his appearance from earlier in the day by taking his cornrow braids out and styling his hair in an Afro. Shamiquia overheard defendant say that he shot Kareem because Nikki "tested his manhood," and that he "put [the gun] in the woods."

In the summer of 2008, defendant was arrested and charged with intentional murder (Penal Law § 125.25 [1]) for the killing of Kareem, and second-degree weapon possession (Penal Law § 265.03 [1] [b]; [3]) (two counts) in connection with this crime. After his arrest, defendant was interrogated by a police detective. When confronted with cell site records contradicting his account of when he left his house before the shooting and where he went,[1] defendant changed his story. He also conceded that he knew that Kareem and Nikki "were having sex." Further, in response to the detective's comment that everyone makes mistakes, defendant replied that "sometimes people make big mistakes." According to the detective, defendant's eyes were watery and he put his head down in his hands. The detective took a break, during which defendant's attorney called and further questioning ceased.

Defendant's first trial resulted in a hung jury and mistrial; he was re-tried in September 2009 in a jury trial presided over by Supreme Court Justice Jerald S. Carter. After the close of the People's case, defense counsel moved to dismiss the charges, arguing that defendant's identity as the shooter had not been established. The People opposed the motion, and Justice Carter reserved decision. The defense then called five witnesses to

---

1. Cell site records also contradicted statements that Nikki made to the police tending to distance defendant from the crime.

testify in defendant's behalf. These witnesses were family members and friends who disputed parts of Shamiquia's testimony. At the close of all the proof, defense counsel again moved for a trial order of dismissal. The judge reserved decision, commenting that he harbored "concerns" about whether or not the People had met their burden.

The jury convicted defendant of the crimes charged. The following colloquy took place between the judge and defense counsel after the jurors left the courtroom:

> "THE COURT: . . . I know you may have a motion. But do you want to make it now, or [do you] wish to put it on papers?
>
> "[DEFENSE COUNSEL]: Regarding a trial order of dismissal that you reserved?
>
> "THE COURT: I suggest that you put that on papers.
>
> "[DEFENSE COUNSEL]: All right."

The judge then set a date for sentencing.

After the jury verdict was handed down, an article about defendant's conviction appeared in Long Island Newsday. As Justice Carter explained on the record at the previously scheduled sentencing hearing, this publicity prompted "a telephone call from an individual advising" him that Kareem, the victim, "was the nephew of a good friend of [his] and also a former associate minister of [his] church, which was unknown to [him] during the course of the trial." Justice Carter immediately notified the attorneys of his discovery; he ultimately concluded that the "relationship [he had] with the uncle render[ed his] appearance in this case a conflict." The judge noted there was a motion that defense counsel wished to file, and also "a further application . . . with respect to a mistrial, as to the fact that this case was tried, and now, because of the outstanding motion, apparently is not going to be decided by the judge who tried the case." Justice Carter set dates for defendant's motion and the People's reply. On December 2, 2009, he issued an order recusing himself and referring the case to the supervising judge.

In the meantime, defense counsel filed a motion seeking an order granting his prior applications for a trial order of dismissal (CPL 290.10 [1]) or, alternatively, setting aside the jury verdict based upon lack of evidence (CPL 330.30 [1]). He also

requested a mistrial "[s]hould the Judge actually recuse [himself] from deciding [this motion], which is [his] stated intent," citing Judiciary Law § 21. This provision says that

> "[a] judge other than a judge of the court of appeals, or of the appellate division of the supreme court, shall not decide or take part in the decision of a question, which was argued orally in the court, when he was not present and sitting therein as a judge" (Judiciary Law § 21).

Defense counsel took the position that because "[t]he issue before [the] Court . . . , although in writing now, was first argued orally before [Justice Carter] at the appropriate stages of the trial" and the written motion involved "issues of fact and credibility[,] . . . only the Judge who heard and witnessed the testimony of the witnesses at the trial [could] rule on the factual and legal issues" presented.

The People opposed the motion. They argued that the evidence was legally sufficient and Judiciary Law § 21 did not foreclose a substitute judge from deciding the pending motion, which raised purely legal questions and did not permit determinations of credibility. In reply, defendant insisted that a trial judge must assess witness credibility when making a legal sufficiency determination. And since Justice Carter was unavailable to decide the pending motion on account of his recusal, defendant urged that a mistrial was the only option.

In a decision and order dated February 17, 2010, Acting Supreme Court Justice Daniel R. Palmieri, the judge to whom the case was reassigned, denied defendant's motion (27 Misc 3d 492 [Sup Ct, Nassau County 2010]). As to the Judiciary Law claim, Justice Palmieri determined that, because a motion to set aside a verdict concerns only questions of law, a substitute judge familiar with the proceedings could decide it and, thus, a mistrial was not warranted. He declared that he had "read and become familiar with the entire record of the trial . . . submitted by the parties," consisting of "the complete trial transcript, including all recorded colloquy, legal arguments and rulings" (id. at 495, 496). Upon applying the standard for assessing legal sufficiency to the evidence at hand, Justice Palmieri concluded that the People had presented a legally sufficient case to the jury that defendant committed the crimes for which he was convicted. He subsequently sentenced defendant to concurrent terms of imprisonment of 20 years to life on the murder conviction and 10 years on the gun possession convictions, to be followed by five years of postrelease supervision.

Defendant appealed, arguing that his conviction should be reversed and the indictment dismissed because the evidence was legally insufficient to prove his guilt. He also protested that he was entitled to a new trial because his original oral motion for a trial order of dismissal was argued before Justice Carter, and Judiciary Law § 21 barred any other judge from deciding the subsequently-filed written motion.

In a decision and order entered on June 21, 2011, the Appellate Division unanimously affirmed (85 AD3d 1055 [2d Dept 2011]). The court held that Judiciary Law § 21 did not prevent Justice Palmieri from deciding defendant's motion because " 'purely legal questions were involved, all discussion was recorded in the minutes, and the successor Judge was not called upon to weigh conflicting testimony or assess credibility' " (85 AD3d at 1056, quoting *Plunkett v Emergency Med. Serv. of N.Y. City*, 234 AD2d 162, 163 [1996]). The Appellate Division further ruled that the evidence, viewed in the light most favorable to the prosecution, as was required, was legally sufficient to establish defendant's guilt beyond a reasonable doubt, and that his conviction was not against the weight of the evidence. A Judge of this Court granted defendant leave to appeal (18 NY3d 924 [2012]), and we now affirm.[2]

## II.

In *Thompson*, a judge became incapacitated while presiding over a jury trial. When another judge was assigned to finish the trial, the defendant objected that Judiciary Law § 21 precluded this, and argued that a mistrial was therefore required. We concluded that Judiciary Law § 21

> "does not prevent the substitution of a Judge in a jury trial since *the ultimate determination of guilt or innocence belongs to the jury and not the Trial Judge.*
>
> "Generally, a Judge may be substituted for another

---

**2.** The People contend that defendant did not preserve the argument he now makes that Judiciary Law § 21 prohibits a substitute judge from deciding questions argued orally before another judge, even where the issue in dispute is purely legal in nature. In fact, defendant did not state this basis for his objection in the trial court. Nonetheless, Justice Palmieri "expressly decided the question raised on appeal" in response to defendant's objection (*see* CPL 470.05 [2]; Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 470.05 at 10-11 [2009 ed], citing *People v Hawkins*, 11 NY3d 484 [2008] and *People v Prado*, 4 NY3d 725 [2004]).

. . . as long as the substitute *indicates on the record the requisite familiarity with the proceedings and no undue prejudice occurs to the defendant or the People"* (90 NY2d at 621 [emphases added]).

There were no motions or decisions outstanding when the substitution was made in *Thompson.* At the time we handed down our decision, though, there was Appellate Division authority for applying Judiciary Law § 21 "not only to oral argument of motions, but to the taking of testimony" (*People v Cameron,* 194 AD2d 438, 438 [1st Dept 1993] [suppression motion], citing *Michel v Michel,* 31 AD2d 313 [4th Dept 1969] [support proceeding where the testimony was heard by two different judges]). Our decision implicitly accepts this premise, and interprets section 21 by looking at whether the replacement judge will be asked to make factual determinations, as opposed to reaching legal conclusions, and overall fairness.

This is the same general approach taken by the First Department in *Plunkett.* There, plaintiffs made an oral application to set aside a jury verdict, and the court directed the parties to brief and submit their positions for his consideration. The judge thereafter informally indicated that the motion should be denied, but he died before making a decision. On appeal, the First Department concluded that

> "[i]n the circumstances presented, it was not error for the successor Judge to consider the motion to set aside the verdict. Since purely legal questions were involved, all discussion was recorded in the minutes, and the successor Judge was not called upon to weigh conflicting testimony or assess credibility, Judiciary Law § 21 would not preclude its reconsideration" (234 AD2d at 163).

The trial judge here relied on the rule articulated in *Plunkett,* which the Second Department adopted when affirming his decision. *Plunkett* is arguably at odds with language in the First Department's earlier decision in *Cameron* (as defendant argues), although not the facts: in *Cameron,* the substitute judge was asked to decide an outstanding motion in a suppression hearing, where credibility determinations would have been involved. Moreover, in *Weiss v City of New York* (277 AD2d 36 [1st Dept 2000]), the First Department held that a judge assigned a case after the original judge retired should have decided a restored motion to reargue, citing *Plunkett.*

The Third and Fourth Departments have also considered section 21 in the context of motion practice. In *State of New York v General Elec. Co.* (215 AD2d 928 [3d Dept 1995]), the Third Department found the bar of section 21 applicable to a discovery motion decided by a successor judge on the papers after oral argument to his predecessor, who retired before deciding the motion. The court cited *Cameron* and *Michel*. The Fourth Department remitted for a new coram nobis hearing in *People v Hooper* (22 AD2d 1006 [4th Dept 1964]), and reversed in *Clover-East Assoc. v Bachler* (23 AD2d 620 [4th Dept 1965]), where the order appealed from denied an application to strike the case from the jury calendar and direct a nonjury trial. In *People v Nenni* (261 AD2d 900 [4th Dept 1999]), the judge who heard the defendant's omnibus motion granted his request for a suppression hearing, but the successor judge later denied suppression without a hearing. The Fourth Department held that the first judge's decision was law of the case and added that the successor judge, who was not present for oral argument, was prohibited from deciding the motion by virtue of Judiciary Law § 21, citing *Cameron* and *Hooper*. The court remitted for a suppression hearing.

In sum, this Court and the Appellate Divisions have rarely reversed on the basis of Judiciary Law § 21, or its predecessor statutes,[3] in a case where a substitute trial judge decided a purely legal question. The other side of the coin is that the Appellate Division has remanded for further proceedings where the substitute judge was required to weigh conflicting testimony he did not hear or assess credibility of witnesses he did not view, as is the case, for example, with respect to a suppression motion. Finally, in *Thompson* we emphasized overall fairness. We specified that the substitute judge must have reviewed the record of the prior proceedings and substantiate that he did this, and that there could be no undue prejudice to the parties resulting from the substitution.

---

**3.** Judiciary Law § 21 derives from statutes adopted in the mid-nineteenth century—i.e., in the days before oral arguments were routinely transcribed (much less recorded) (*see generally* McKinney's Cons Laws of NY, Book 29, Judiciary Law § 21, Historical and Statutory Notes at 127). The legislature amended the law in 1850 to include an exception for arguments in the Court of Appeals (*see* Throop, Code of Civil Procedure, § 46 at 20 [1877]). This exception was subsequently expanded to cover the Appellate Division. Further, "the word 'orally' [was] added" to the statute as originally enacted "because taking part in the decision of a cause submitted [was] not within the [statute's] intent" (*id.*).

■ Looking at the facts of this case through the lens of *Thompson* and *Plunkett*, we conclude that Judiciary Law § 21 did not bar Justice Palmieri from ruling on the motion at issue. First, legal sufficiency presents a pure question of law; specifically,

> "[a] verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt. A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained its burden of proof" (*People v Danielson*, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]).

Questions of quality or the weight to be given to the proof are not to be considered in such an evaluation (*see People v Sabella*, 35 NY2d 158, 167 [1974]).[4] This is also the case when deciding a motion to set aside the verdict (*see People v Carter*, 63 NY2d 530, 536-537 [1984]). Trial judges are prohibited from setting aside a verdict as against the weight of the evidence (*id.* at 536). This power is reserved to the Appellate Division, which essentially sits as a thirteenth juror (*see Danielson*, 9 NY3d at 348 [discussing the nature and parameters of the Appellate Division's weight-of-the-evidence review]).

Next, Justice Palmieri made clear in his decision that he had reviewed and was familiar with the prior proceedings in the case. And, of course, he had the benefit of the parties' motion papers, submitted after Justice Carter indicated his intention to recuse himself. Finally, defendant has shown no prejudice. It is not sufficient that Justice Carter may have expressed some reservations about the proof, leading defendant to speculate that Justice Carter might have issued a favorable ruling. Nothing in the Judiciary Law entitles a defendant to have a particular judge decide a motion.[5]

---

4. To the extent defendant still argues that a trial judge must make factual and credibility determinations when deciding a trial order of dismissal, this is simply not correct.

5. We note that even if we had decided that Judiciary Law § 21 was violated

*(n. cont'd)*

## III.

Reaching the merits of defendant's motion, we conclude that legally sufficient evidence supports his convictions. Again, a legal sufficiency review requires evaluation of the evidence in the light most favorable to the People. We must assume that the jury credited the People's witnesses and gave the prosecution's evidence the full weight it might reasonably be accorded. Here, the testimony of Nikki, Sharnae, Joel, Shamiquia and the detective, as well as the cell site evidence, taken together, was legally sufficient to support defendant's convictions for murder and weapon possession.

Defendant principally complains that Shamiquia's testimony was incredible as a matter of law.

> "Incredibility as a matter of law may result '[w]hen all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence,' because in that event 'the jury is left without basis, other than impermissible speculation, for its determination of either' " (*see People v Calabria*, 3 NY3d 80, 82 [2004], quoting *People v Jackson*, 65 NY2d 265, 272 [1985]).

But Shamiquia did not provide internally inconsistent testimony, and she was not the source of "all of the evidence of [defendant's] guilt." While her testimony differed in some respects from that of other witnesses (primarily defense witnesses), resolution of such inconsistencies is for the jury (*Jackson*, 65 NY2d at 272).

Accordingly, the order of the Appellate Division should be affirmed.

Chief Judge LIPPMAN and Judges GRAFFEO, SMITH, PIGOTT and RIVERA concur; Judge ABDUS-SALAAM taking no part.

Order affirmed.

---

in this case, the remedy would have been remittal for a new oral argument and decision at the trial level, subject to appellate review, not a mistrial as defendant contends.