People v Leonard (2022 NY Slip Op 04468)

People v Leonard

2022 NY Slip Op 04468

Decided on July 8, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on July 8, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CENTRA, LINDLEY, NEMOYER, AND CURRAN, JJ.

390 KA 18-00148

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JASMEN T. LEONARD, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (KAYLAN C. PORTER OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Monroe County Court (Christopher S. Ciaccio, J.), rendered March 22, 2017. The judgment convicted defendant upon a plea of guilty of criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is affirmed.
Memorandum: In appeal No. 1, defendant appeals from a judgment convicting him upon his plea of guilty of criminal possession of a weapon in the second degree (Penal Law § 265.03 [3]) and, in appeal No. 2, he appeals from a judgment convicting him upon his plea of guilty of attempted criminal possession of a weapon in the second degree (§§ 110.00, 265.03 [3]). The pleas were taken during one proceeding, and we agree with defendant in both appeals that he did not validly waive his right to appeal. As the People correctly concede, County Court provided defendant with erroneous information about the scope of the waiver of the right to appeal, including characterizing it as an absolute bar to the taking of an appeal, and we thus conclude that the colloquy was insufficient to ensure that defendant's waiver of the right to appeal was voluntary, knowing, and intelligent (see People v Thomas, 34 NY3d 545, 564-567 [2019], cert denied — US &mdash, 140 S Ct 2634 [2020]).
Defendant contends with respect to appeal No. 1 that the court erred in failing to suppress the gun and his statements to the police. We reject that contention. The evidence at the suppression hearing established that the police responded to a 911 call that a parolee wanted on an outstanding warrant and who was known to possess guns was a passenger in a certain vehicle. The officers found a vehicle matching the description given by the 911 caller and followed it, losing sight of the vehicle momentarily but then spotting it stopped on a curb with the passenger standing outside the vehicle. As one of the officers exited the police vehicle and began to approach the passenger, the passenger ran away while holding the left side of his waistband and the officer chased after him. As he was being chased, the passenger threw a black object, believed to be a handgun, over a fence. The passenger, identified as defendant, was apprehended, and a gun was recovered from where the officer saw defendant throw an object.
The court properly determined that the officers had at least an objective, credible reason to approach defendant and request information (see People v Moore, 6 NY3d 496, 500 [2006]; People v Greaves, 123 AD2d 445, 445 [2d Dept 1986], lv denied 69 NY2d 712 [1986]). Defendant's subsequent flight with his hand on his waistband from the approaching officer, combined with the 911 caller's report about a wanted violent parolee who was potentially armed, and the police officers' observations confirming the vehicle and suspect descriptions from the 911 call, provided the officers with reasonable suspicion to pursue defendant (see People v Habeeb, 177 AD3d 1271, 1273 [4th Dept 2019], lv denied 34 NY3d 1159 [2020]; People v Hillard, 79 AD3d 1757, 1758 [4th Dept 2010], lv denied 17 NY3d 796 [2011]; see generally [*2]Moore, 6 NY3d at 500-501).
We respectfully disagree with our dissenting colleagues that the approaching officer's testimony was unclear whether he observed defendant grabbing his waistband before the officer pursued him and that the People therefore failed to meet their burden of establishing that the pursuit of defendant was justified. In our view, the testimony at the suppression hearing supports the conclusion that defendant fled either before or just as the officer exited his vehicle and that defendant grabbed his waistband at that same moment.
We reject defendant's further contention with respect to appeal No. 1 that he was denied effective assistance of counsel based on defense counsel not challenging the People's failure to produce the alleged arrest warrant at the suppression hearing. Defendant's arrest was not based solely on the alleged outstanding warrant, and thus the People's failure to produce that warrant at the hearing would not require the suppression of evidence arising from defendant's arrest (cf. People v Dortch, 186 AD3d 1114, 1114-1116 [4th Dept 2020]; People v Searight, 162 AD3d 1633, 1634 [4th Dept 2018]). It thus cannot be said that defendant was denied effective assistance of counsel because defense counsel's failure to raise that argument had little or no chance of success (see People v Hasan, 165 AD3d 1606, 1608 [4th Dept 2018], lv denied 32 NY3d 1125 [2018]; see generally People v Caban, 5 NY3d 143, 152 [2005]).
Defendant also contends with respect to appeal No. 1 that Judiciary Law § 21 was violated because the suppression hearing was heard before one Justice (Winslow, J.), who rendered a determination refusing to suppress the evidence at issue, and then a second Judge (Ciaccio, J.) reopened the suppression hearing to allow for further cross-examination of the sole witness at the hearing after the People's belated disclosure of certain Rosario material. We reject that contention. "[W]here a judge or justice replaces another judge or justice in the midst of litigation," the primary question is " 'whether the replacement judge [or justice] will be asked to make factual determinations, as opposed to reaching legal conclusions, and overall fairness' " (People v Massey, 173 AD3d 1801, 1804 [4th Dept 2019], quoting People v Hampton, 21 NY3d 277, 285 [2013]). Under the circumstances of this case, we conclude that there was no violation of Judiciary Law § 21 (see Massey, 173 AD3d at 1804). The Justice who heard the initial hearing issued a determination denying defendant's request for suppression of evidence, and the successor Judge did not issue a decision on a hearing for which he was not present (cf. People v Cameron, 194 AD2d 438, 438 [1st Dept 1993]; Michel v Michel, 31 AD2d 313, 316 [4th Dept 1969]). The second Judge adopted the first Justice's findings of fact and determined that the additional cross-examination of the witness elicited no new facts that would provide any basis to overturn or call into question the previous denial of defendant's request for suppression.
With respect to both appeals, defendant contends that this Court should find mitigating circumstances to run the sentences concurrently. Pursuant to Penal Law § 70.25 (former [2-b]), the consecutive sentences here were mandatory unless the sentencing court, in the interest of justice, found mitigating circumstances. Defendant, however, never requested that the court find mitigating circumstances to run the sentences concurrently, and thus his contention is not preserved for our review (see People v Dunbar, 183 AD3d 1263, 1265 [4th Dept 2020], lv denied 35 NY3d 1044 [2020]; People v Hamlet, 227 AD2d 203, 204 [1st Dept 1996], lv denied 88 NY2d 1021 [1996]). As we held in Dunbar, "granting relief on defendant's unpreserved sentencing argument would frustrate the People's statutory right to 'an opportunity to present relevant information to assist the [sentencing] court in making th[e] determination' regarding mitigating circumstances" (183 AD3d at 1265). Simply put, "if the claim is not raised [before the sentencing court], then the sentences must be consecutive" (Hamlet, 227 AD2d at 204).
All concur except Smith, J.P., and Lindley, J., who dissent and vote to reverse in accordance with the following memorandum: We agree with the majority that the judgment in appeal No. 2 should be affirmed. In appeal No. 1, however, we respectfully dissent because in our view the People failed to meet their burden of proof at the suppression hearing. More specifically, we conclude that the People failed to establish that the arresting officer's initial pursuit of defendant was lawful, i.e., based on " 'reasonable suspicion that defendant has committed or is about to commit a crime' " (People v Riddick, 70 AD3d 1421, 1422 [4th Dept 2010], lv denied 14 NY3d 844 [2010]), as Supreme Court determined. We would therefore reverse the judgment, vacate the plea, grant those parts of defendant's omnibus motion seeking [*3]suppression of the firearm he discarded while running away from the officer and the statements defendant made to the police subsequent to his arrest, dismiss the indictment, and remit the matter to County Court for proceedings pursuant to CPL 470.45.
The evidence at the hearing established that an informant called 911 in Rochester and said: "My parole officer had wanted me to go over and see if this guy is over there and the guy is over here and he's not answering his phone, and I guess he's wanted. He's a guy with guns and all that." The informant also said that "the guy," who was dark-skinned and wearing a t-shirt and baseball hat, was in the passenger seat of a green Infiniti located on Hixon Street near Thomas Street. When the 911 operator asked whether the person in question "has been known to carry weapons," the informant responded, "I guess so. He told me he was very violent and needed him off the street like immediately. He's wanted. So, I don't even know the guy's name. All I know is that he's a passenger in the car and he's over there right now." The operator asked what the person was wanted for, to which the informant answered, "I don't have the slightest idea. I don't know - - they don't put information out there like that." Upon request of the operator, the informant identified himself by name, although it is unclear from the record whether the name given was the informant's real name, and provided the number from which he was calling. At the conclusion of the call the operator said that she would send an officer to the area.
The information provided by the informant was broadcast over police radio and heard by the arresting officer and his partner, who were on patrol in the general area. Upon arriving at Hixson Street, the officers did not observe a green Infiniti. The arresting officer then used his cell phone to call the informant at the number that he had given to the operator. During the ensuing conversation, the informant told the arresting officer that he was following the Infiniti, which was now near Joseph Place and Joseph Avenue. According to the arresting officer, the informant also said that he was a parolee himself and that he had seen the individual about whom he was calling on a wanted poster at the parole office.
The officers proceeded to Joseph Place where they encountered a green Infiniti traveling in the opposite direction. The arresting officer's partner yelled out of the police vehicle window for the driver of the Infiniti to stop, but the green Infiniti kept going. The officers turned around and pursued the vehicle. After briefly losing sight of the green Infiniti, the officers observed it stopped on the side of Laser Street. A dark-skinned man in a t-shirt and baseball hat, later identified as defendant, was standing outside the vehicle's front passenger door, which was open. The arresting officer exited his patrol vehicle and began walking toward defendant, who fled on foot. The arresting officer gave chase, and during the pursuit defendant, who was grabbing the front of his waistband as he ran, discarded a handgun. Defendant was soon arrested and charged with criminal possession of a weapon in the second degree, among other offenses.
The only witness to testify at the suppression hearing was the arresting officer. The People did not produce a warrant for defendant's arrest at the hearing, and no evidence was offered that defendant was even on parole at the time.
In our view, the information provided by the informant, standing alone, clearly did not provide reasonable suspicion to believe that defendant possessed a weapon or had committed any other crime. Indeed, violating parole, or having a parole warrant, is not a crime. The informant did not say that he saw defendant with a gun, nor did he say that his parole officer saw defendant with a gun. Instead, the informant merely said that his parole officer told him that defendant, whom the informant did not know, was very dangerous and known to carry weapons. Thus, the attempt by the officers to stop the green Infiniti was unlawful inasmuch as a vehicle stop must be supported by reasonable suspicion, which did not exist here. But the vehicle did not stop in response to the officer's request to do so, and thus the issue presented here is whether the arresting officer lawfully pursued defendant after defendant fled on foot.
The People assert that the court properly determined that the pursuit was justified because, in addition to the information provided by the informant, the arresting officer observed defendant grabbing the front of his pants while running away, as if he had a gun in his waistband. Although defendant's act of grabbing his waistband increased the degree of suspicion, perhaps even to the level required for pursuit, the evidence at the suppression hearing does not establish whether the arresting officer observed that conduct before or after he gave chase. If the observation was not made until after the officer had already started chasing defendant, the pursuit [*4]would be unlawful inasmuch as it would be based entirely only on the informant's hearsay information and defendant's flight, which together do not provide reasonable suspicion to believe that defendant had committed or was about to commit a crime. "Flight alone, . . . or even in conjunction with equivocal circumstances that might justify a police request for information . . . , is insufficient to justify pursuit because an individual has a right 'to be let alone' and refuse to respond to police inquiry" (People v Holmes, 81 NY2d 1056, 1058 [1993]; see People v Jones, 174 AD3d 1532, 1533 [4th Dept 2019], lv denied 34 NY3d 982 [2019]).
The relevant testimony from the arresting officer is as follows:
"Q. When you saw the person out of the vehicle, what did you do?
A. I then exited my patrol car and began to walk toward him.
Q. Now, the person that you saw outside of the green Infiniti, did you see that person get out of the green Infiniti?
A. No, I didn't.
Q. They were standing outside the green Infiniti when you arrived?
A. Yes.
Q. And after you started following that individual, where did you follow that person to?
A. As soon as I exited my patrol car, the passenger started to run southbound through the back yards.
Q. Did you follow after that person?
A. Yes, I did.
Q. What, if anything, was that person doing while — was that person a male?
A. Yes, it was.
Q. What, if anything, was that person doing while he was running?
A. He was holding his left side of his waistband.
* * *
Q. Can you describe the placement of his hand as he was running?
A. He was holding his left hand in the area of his - - the front of his waistband.
Q. Was he holding it tight to his body, his hand?
A. Yes, it was.
* * *
Q. Once this person was running away from you, did you follow?
A. Yes, I did.
Q. Where did you follow him to?
A. I followed him to the fence that is on the border of 18 Joseph Place.
Q. And what happened once you got to the fence?
A. As he approached the fence, he glanced back at me quickly, and then I observed both of his [*5]hands reach up towards the top of the fence, and when he did this, I observed a black object, which I believed to be a handgun, go over the fence."
Based on our reading of the testimony, it is unclear whether, as the suppression court found, the officer observed defendant grabbing his waistband before the officer pursued him. On a motion to suppress evidence, of course, "the People bear the burden of going forward to show the legality of the police conduct in the first instance" (People v Walls, 37 NY3d 987, 988 [2021] [internal quotation marks omitted]; see People v Berrios, 28 NY2d 361, 367-368 [1971]). Here, given the ambiguity of the officer's testimony, we do not think that the People met their burden of establishing that the pursuit was justified based on the officer's belief that defendant may have possessed a weapon.
Even assuming, arguendo, that the pursuit was justified because the officer reasonably suspected that defendant had a parole warrant, we are precluded from affirming on that ground because the suppression court did not rely on it to deny defendant's motion (see CPL 470.15 [1]; People v Concepcion, 17 NY3d 192, 196 [2011]; People v LaFontaine, 92 NY2d 470, 474 [1998], rearg denied 93 NY2d 849 [1999]). Again, the court denied the motion on the ground that the pursuit was justified because the officer reasonably suspected that defendant had committed or was about to commit a crime, presumably criminal possession of a weapon.
Although credibility determinations of the suppression court are generally entitled to great deference (see People v Daniels, 147 AD3d 1392, 1392-1393 [4th Dept 2017], lv denied 29 NY3d 1077 [2017]), the arresting officer's credibility is not at issue here. The question is whether the officer's testimony, accepted as true, established that he had reasonable suspicion to pursue defendant, and we are no less able than the suppression court to make that determination. We therefore conclude that the judgment should be reversed and those parts of the omnibus motion seeking suppression granted.
Entered: July 8, 2022
Ann Dillon Flynn
Clerk of the Court