People v Freeland (2023 NY Slip Op 00567)

People v Freeland

2023 NY Slip Op 00567

Decided on February 3, 2023

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 3, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, PERADOTTO, CURRAN, AND BANNISTER, JJ.

912 KA 17-01073

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
BARBARA A. FREELAND, DEFENDANT-APPELLANT. 

PEKAREK LAW GROUP, P.C., WELLSVILLE (DANIELLE G. CHAMBERLAIN OF COUNSEL), FOR DEFENDANT-APPELLANT.
BROOKS T. BAKER, DISTRICT ATTORNEY, BATH (JOHN C. TUNNEY OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Steuben County Court (Marianne Furfure, A.J.), rendered June 17, 2013. The judgment convicted defendant, upon a jury verdict, of offering a false instrument for filing in the first degree and falsifying business records in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: Defendant appeals from a judgment convicting her, upon a jury verdict, of offering a false instrument for filing in the first degree (Penal Law former § 175.35) and falsifying business records in the first degree (§ 175.10). The conviction arose from defendant's conduct in presenting to the relevant agency an application for food stamp benefits in which she indicated that a young adult, who had previously lived with defendant at her parents' house, was residing with her at her new residence. Defendant challenges the conviction solely on the ground that the People failed to present legally sufficient evidence to establish that she falsely listed the young adult as a member of her household on the application and that she had the requisite intent to defraud. We conclude that defendant's contention lacks merit.
"A verdict is legally sufficient when, viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks omitted]; see People v Kancharla, 23 NY3d 294, 302 [2014]). "A sufficiency inquiry requires a court to marshal competent facts most favorable to the People and determine whether, as a matter of law, a jury could logically conclude that the People sustained [their] burden of proof" (Danielson, 9 NY3d at 349; see Kancharla, 23 NY3d at 302). " 'This deferential standard is employed because the courts' role on legal sufficiency review is simply to determine whether enough evidence has been presented so that the resulting verdict was lawful' " (People v Li, 34 NY3d 357, 363 [2019]). "Importantly, [i]n determining the legal sufficiency of the evidence for a criminal conviction[,] we indulge all reasonable inferences in the People's favor, mindful that a jury faced with conflicting evidence may accept some and reject other items of evidence" (id. at 364 [internal quotation marks omitted]). "It is the 'province of the jury' to assess witness credibility . . . , and we therefore assume on a legal sufficiency review that the jury credited the People's witnesses" (id.; see People v Gordon, 23 NY3d 643, 649 [2014]; People v Hampton, 21 NY3d 277, 288 [2013]).
Here, although the young adult acknowledged that, even after defendant applied for food stamp benefits, defendant's new residence had been used extensively as the young adult's mailing address for various correspondence and he had some belongings at that residence, the testimony of the young adult and his girlfriend established that the young adult stopped residing with defendant at her parents' house four months before the date of the application, moved to live with the girlfriend at the home of the girlfriend's parents and briefly at another location, took personal items such as clothing with him, did not accompany defendant to reside at her new [*2]residence, did not live with defendant as of the date of the application, never slept at the new residence, and did not eat there except during occasional visits. Viewing that evidence in a light most favorable to the People, we conclude that there is a valid line of reasoning and permissible inferences from which a rational jury, having credited the testimony of the young adult and the girlfriend, could have found that the young adult was not " 'living in [defendant's] household within the commonly understood meaning of that phrase' during the time period in question" (People v Oberlander, 60 AD3d 1288, 1289 [4th Dept 2009]; cf. People v Stumbrice, 194 AD2d 931, 933-934 [3d Dept 1993], lv denied 82 NY2d 727 [1993]).
We reject defendant's related contention that the young adult's testimony is incredible as a matter of law. Under a legal sufficiency review, "[i]ncredibility as a matter of law may result '[w]hen all of the evidence of guilt comes from a single prosecution witness who gives irreconcilable testimony pointing both to guilt and innocence,' because in that event 'the jury is left without basis, other than impermissible speculation, for its determination of either' " (People v Calabria, 3 NY3d 80, 82 [2004], quoting People v Jackson, 65 NY2d 265, 272 [1985]; see Hampton, 21 NY3d at 288). Here, however, the young adult "did not provide internally inconsistent testimony, and [he] was not the source of 'all of the evidence of [defendant's] guilt' " (Hampton, 21 NY3d at 288; see Calabria, 3 NY3d at 82-83). Defendant correctly points out that the young adult acknowledged on cross-examination that he had initially omitted from his testimony in response to the prosecutor's broad questioning on direct examination the fact that he and the girlfriend had briefly lived together at a location other than the home of the girlfriend's parents. We note, however, that the young adult immediately explained on redirect examination that he had lived with the girlfriend continuously since moving out of the house of defendant's parents four months prior to the application, with such cohabitation occurring almost exclusively at the home of the girlfriend's parents but interrupted briefly by a stay at another location (see generally People v Delamota, 18 NY3d 107, 114-116 [2011]). Additionally, the young adult was unwavering in his testimony on the material issue that he never lived at defendant's new residence (see id. at 116; Calabria, 3 NY3d at 82-83). While the testimony of the young adult and the girlfriend differed from defendant's testimony regarding whether the young adult was a member of defendant's household at the time of the application, "resolution of such inconsistencies [was] for the jury" (Hampton, 21 NY3d at 288; see Delamota, 18 NY3d at 116; Jackson, 65 NY2d at 272).
Finally, contrary to defendant's contention, we conclude that the evidence is legally sufficient to establish the intent element of each crime because "[t]he requisite intent to defraud may be inferred from the fact that defendant indicated on the [application] that [the young adult] resided with [her] when [she] knew that [the young adult] did not" (People v Scutt, 19 AD3d 1131, 1132 [4th Dept 2005], lv denied 5 NY3d 810 [2005]; see People v Swain, 309 AD2d 1173, 1173-1174 [4th Dept 2003], lv denied 1 NY3d 581 [2003]; People v Mathis, 218 AD2d 817, 817-818 [2d Dept 1995], lv denied 86 NY2d 844 [1995]; Stumbrice, 194 AD2d at 934).
Entered: February 3, 2023
Ann Dillon Flynn
Clerk of the Court